Joshua Briones (SBN 205293)
jbriones@mintz.com
E. Crystal Lopez (SBN 296297)
eclopez@mintz.com
Matthew Novian (SBN 324144)
mjnovian@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
Century Plaza Towers 2029 Century Park East Suite 3100
Los Angeles, CA 90067
Telephone:  310 586 3200
Facsimile:   310 586 3202

Attorneys for Defendant,
EF EDUCATION FIRST, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON SENSIBAUGH, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EF EDUCATION FIRST, INC.<br><br>Defendant. | Case No.:  2:20-cv-01068-MWF-PVC<br><br>**DECLARATION OF MATTHEW NOVIAN IN SUPPORT OF DEFENDANT EF EDUCATION FIRST, INC.'S REQUEST FOR JUDICIAL NOTICE  IN SUPPORT OF MOTION TO STAY THE ACTION PENDING *BARR V. AAPC***<br><br>Hon. Michael W. Fitzgerald<br><br>Date:       April 6, 2020<br>Time:      10:00 a.m.<br>Dept:       Courtroom 5A<br><br> Complaint Filed: February 2, 2020 |

I Matthew Novian declare as follows:

1.      I am a member of the state bar, an attorney in the law firm of Mintz Levin Cohn Ferris Glovsky and Popeo PC, counsel for Defendant EF Education First, Inc. ("EF") in the above captioned and numbered action, and have personal knowledge of the matters set forth in this declaration.

2.      Attached hereto as Exhibit A is a true and correct copy of an February 7, 2020 Order Granting a Stay in *Wright v. Exp Realty, LLC*, 6:18-cv-1851, Dkt. 96 (M.D. Fla. Feb. 7, 2020).

3.      Attached hereto as Exhibit B is a true and correct copy of the First Amended Complaint filed by American Association of Political Consultants in *American Association of Political Consultants Inc. v. Sessions*, No. 5:16-CV-252-D, Dkt. 18 (E.D. N.C. Aug. 5, 2016).

4.      Attached hereto as Exhibit C is a true and correct copy of a Memorandum of Law in Support of American Association of Political Consultants, Inc. Response in Opposition to Cross Motion for Summary Judgment in *American Association of Political Consultants Inc. v. Sessions*, No. 5:16-CV-252-D, Dkt. 36 (E.D. N.C. July 5, 2017).

5.      Attached hereto as Exhibit D is a true and correct copy the Supreme Court Brief of Respondents AAPC, Inc., in *Barr v. AAPC*, No. 19-511 (filed December 4, 2019).

6.      Attached hereto as Exhibit E is a true and correct copy of the Question Presented in *Barr v. AAPC,* 19-631 (Cert. Granted January 10, 2020, Oral Argument April 22, 2020)

7.      Attached hereto as Exhibit F is a true and correct copy a Stipulation and Order to Adjourn Case Management Conference, Vacate Case Management Statement Deadline, and Stay Case Pending Decision in *Facebook v. Duguid* in *Brickman v. Facebook Inc.*, 3:16-cv-00751-WHO, Dkt. 127 (N.D. Cal. Jan. 30,

2020).

8.    Attached hereto as Exhibit G is a true and correct copy of the Supreme Court Docket in *Facebook v. Duguid*, 19-511.

9.    Attached hereto as Exhibit H is a true and correct copy of Appellant's Petition for Cert. in *Charter Communications Inc. v. Gallion*, pending, No. 19-575 (December 1, 2019).

10.    Attached hereto as Exhibit I is a true and correct copy of the Supreme Court's Order List: 589 U.S., Monday January 27, 2020, Certiorari – Summary Disposition.

I downloaded the documents attached as Exhibits A through I from the respective U.S. District Courts' Official Court Electronic Document Filing System or from the respective dockets of the Supreme Court of the United States.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28th day of February, 2020 at Los Angeles, California.

_____
Matthew Novian

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

BRUCE WRIGHT, JORGE VALDES
and EDWIN DIAZ,

           Plaintiffs,

v.                               Case No:  6:18-cv-1851-Orl-40EJK

EXP REALTY, LLC,

           Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant's Motion to Stay Proceedings (Doc. 94), filed January 22, 2020. On February 5, 2020, Plaintiffs responded in opposition. (Doc. 96). Upon consideration, Defendant's motion is due to be granted.

## I.    BACKGROUND

Plaintiffs initiated this action on October 30, 2018, and filed their Amended Complaint on January 24, 2019 (Doc. 30), seeking recovery against Defendant under the Telephone Consumer Protection Act ("**TCPA**"). On October 25, 2019, Plaintiffs filed a Motion for Class Certification (Doc. 68), in an attempt to address what they describe as a "pervasive problem emanating from the real estate industry." (*Id.*). Plaintiffs argue that real estate brokers are violating the TCPA by allowing realtors to: "(1) purchase leads lists of consumers with whom the realtors and the brokerages have no relationship and (2) repeatedly cold calling them to solicit real estate listings using calling platforms that include the ability to autodial and transmit prerecorded voice messages . . . ." (*Id.*).

Defendant now moves to stay these proceedings pending the Supreme Court's decision in *William P. Barr v. Am. Ass'n Political Consultants Inc., et al.*, Case No. 19-631. (Doc. 94).

## II.    DISCUSSION

District courts have broad discretion to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). Nevertheless, staying a matter is an extraordinary measure that should only be employed to further the ends of justice, and the district court should resolve any doubts against issuing a stay. *See Bank of Am., N.A. v. Sullivan*, No. 8:13-CV-385, 2013 WL 2285079, at *2 (M.D. Fla. May 23, 2013).

Defendant asks the Court to stay proceedings pending the Supreme Court's decision in *Barr v. Am. Ass'n Political Consultants* because it has the "potential to moot this action, as the Supreme Court is reviewing whether the statute on which Plaintiff relies – the TCPA – is constitutional." (Doc. 94, p. 1). Plaintiff argues that "[s]imply because eXp hopes the Supreme Court will overturn the Fourth Circuit's decision—and change clear Eleventh Circuit law—does not warrant a stay pending the decision in *Barr.*" (Doc. 97, p. 1).

The Court believes that any proceedings before the Supreme Court issues guidance in the upcoming *Barr v. Am. Ass'n* will be—among other things—a waste of judicial resources and a waste of the parties' time and energy. Additionally, "[T]he decision to grant a stay . . . is generally left to the sound discretion of district courts." *Ryan v. Gonzales*, 568 U.S. 57, 74 (2013) (internal quotations and citations omitted).

## III.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

Case 2:20-cv-01068-FtA-PVC   Document 13-2   Filed 02/28/20   Page 7 of 110   Page
Case 6:18-cv-01831-PGB-EJK   Document 99-2   Filed 02/07/20   Page 3 of 3 PageID 1931
ID #:67

1.     Defendant's Motion to Stay Proceedings (Doc. 94) is **GRANTED**;

*2.*     On or before **Friday, March 13, 2020**, the parties shall provide the

Court with a written status report detailing the upcoming Supreme Court oral

argument schedule and/or any updates in the Supreme Court's case and

decision.

  **DONE AND ORDERED** in Orlando, Florida on February 7, 2020.


PAUL G. BYRON
UNITED STATES DISTRICT JUDGE



Copies furnished to:

Counsel of Record
Unrepresented Parties

# EXHIBIT B

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NORTH CAROLINA –WESTERN DIVISION

| | |
|---|---|
| **AMERICAN ASSOCIATION OF POLITICAL CONSULTANTS, INC.,** ) | |
| ) | |
| **DEMOCRATIC PARTY OF OREGON, INC.,** ) | |
| ) | |
| **PUBLIC POLICY POLLING, LLC,** ) | |
| ) | |
| **TEA PARTY FORWARD PAC, and** ) | **Civil Action No. 5:16-cv-00252-D** |
| ) | |
| **WASHINGTON STATE DEMOCRATIC CENTRAL COMMITTEE,** ) | |
| ) | |
| **Plaintiffs** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **LORETTA LYNCH, in her official capacity as Attorney General of the United States and** ) | |
| ) | |
| **FEDERAL COMMUNICATIONS COMMISSION, a federal agency,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## FIRST AMENDED COMPLAINT

COMES NOW American Association of Political Consultants, Inc. ("AAPC"), Democratic Party of Oregon, Inc. ("DPO"), Public Policy Polling, LLC ("PPP"), Tea Party Forward PAC ("TPF"), and Washington State Democratic Central Committee ("WSDCC") (collectively "Plaintiffs") by and through counsel, and allege the following:

## I.    NATURE OF THE CASE

1.    This is a civil action wherein Plaintiffs pray for declaratory judgment as well as preliminary and permanent injunctions to restrain Defendants from acting under color of law to

deprive Plaintiffs of rights secured to them by the First Amendment to the United States Constitution.

2.  Specifically, Plaintiffs allege that the ban on certain calls to cell phones in the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii) (hereinafter the "cell phone call ban"), is an unconstitutional violation of their First Amendment rights because it is content-based and cannot withstand strict scrutiny.

3.  Congress and the Federal Communications Commission ("FCC") have shown that they intend to continue to create content-based exemptions to the cell phone call ban based both on the content of the speech involved and the identity of certain favored speakers.  The TCPA itself provides the FCC the power to do this in the future.  *See infra* ¶ 26.  This history and the FCC and Congress' demonstrated ability and intent to apply the cell phone call ban in a content-based way shows that the cell phone call ban is unconstitutional.

4.  This lawsuit is a challenge to a federal statute, as it is content-based and regulates Plaintiffs' fully-protected, political speech.  This is not a challenge to FCC orders or regulations promulgated under that statute.

## II.    JURISDICTION

5.  Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331.

## III.   VENUE

6.  Venue lies with this Court pursuant to 28 U.S.C. § 1391(e)(1)(C) because a plaintiff resides in this district and this case does not involve real property.

## IV.    AUTHORITY FOR RELIEF

7.  Authority for declaratory relief sought by Plaintiffs is conferred upon this Court by 28 U.S.C. §§ 2201 and 2202, and by Fed. R. Civ. P. 57.

## V.    PARTIES

8.    Plaintiff AAPC is a bipartisan, nonprofit association of political professionals located in McLean, Virginia and organized under § 501(c)(6) of the Internal Revenue Code ("IRC").  AAPC provides education for its members and advocates for the protection of political free speech.  AAPC members include political fundraisers, organizers, and persons who conduct and analyze political polls, i.e. political pollsters and opinion researchers.  AAPC members make calls to persons on their cell phones to solicit political donations and to advise on political and governmental issues.  AAPC members would make these calls to persons who did not provide prior express consent to them using an automatic telephone dialing system ("ATDS"), artificial or prerecorded voice but for the cell phone call ban and the credible threat and potential for prosecution by the federal government, states, or private persons or classes of persons[1].

9.    Plaintiff DPO is located in Portland, Oregon and organized as a tax-exempt nonprofit organization under § 527 of the IRC.  DPO works to promote the interests of the Democratic Party in the State of Oregon including coordinating, organizing and electing Democratic candidates.  DPO makes calls to registered Democratic and progressive non-affiliated voters on their cell phones to advise on political and governmental issues, give voters critical information to help them with the voting process, encourage voters to return their ballots by deadlines and vote for Democratic candidates, and solicit political donations.  DPO would make these calls to persons who did not provide prior express consent to it using an ATDS, artificial or prerecorded voice but for the cell phone call ban and the credible threat and potential for prosecution by the federal government, states, or private persons or classes of persons.

---

[1] Indeed, our sitting President and a major political candidate in the current presidential race are or have been defendants in TCPA lawsuits seeking class action status.  *See Shamblin v. Obama for Am.*, No. 8:13-cv-2428, 2015 U.S. Dist. Lexis 54849, *18 (M.D. Fla. Apr. 27, 2015).  *See also Thorne v. Donald J. Trump for President, Inc.*, No. 1:16-cv-4603 (N.D. Ill. Apr. 25, 2016).

10.     Plaintiff PPP is a limited liability for-profit company located in Raleigh, North Carolina.  PPP measures and tracks public opinion on candidates, campaigns, and other political issues with automated telephone surveys.  PPP makes calls to persons on their cell phones on behalf of politicians, political organizations, unions, consultants, and other organizations.  PPP would make these calls to persons who did not provide prior express consent to it using an ATDS, artificial or prerecorded voice but for the cell phone call ban and the credible threat and potential for prosecution by the federal government, states, or private persons or classes of persons.

11.     Plaintiff TPF is located in Alexandria, Virginia and organized as a tax-exempt nonprofit organization under § 527 of the IRC.  TPF works to promote the interests of the Tea Party by reforming political parties and government to advance the core principles of the Founding Fathers, recruiting Americans who share that same vision, and encouraging grassroots operations to vote and elect candidates who represent these ideals.  TPF makes calls to potential voters on their cell phones to solicit political donations and advise on political and governmental issues.  TPF would make these calls to persons who did not provide prior express consent to it using an ATDS, artificial or prerecorded voice but for the cell phone call ban and the credible threat and potential for prosecution by the federal government, states, or private persons or classes of persons.

12.     Plaintiff WSDCC is the Democratic Party in the State of Washington and is located in Seattle, Washington.  WSDCC is organized under § 527 of the IRC.  WSDCC works to elect Democrats, uphold Democratic values, and support Democrats across the state.  WSDCC members include elected officials, candidates for office, activists, and voters.  WSDCC makes calls to registered voters on their cell phones to advise on political and governmental

issues and to solicit political donations.  WSDCC would make these calls to persons who did not provide prior express consent to it using an ATDS, artificial or prerecorded voice but for the cell phone call ban and the credible threat and potential for prosecution by the federal government, states, or private persons or classes of persons.

13.     Defendant Loretta Lynch ("Attorney General") heads the United States Department of Justice ("DOJ") which is the agency in the United States government responsible for enforcement of federal law.  In her official capacity as Attorney General of the United States, she enforces the law complained of in this action.  Plaintiffs sue her in her official capacity.

14.     Defendant FCC is a part of the executive branch of the United States government responsible for promulgation of regulations under the TCPA and enforcement of its terms.  47 U.S.C. § 227(b)(2); 47 U.S.C. § 503(b).

## VI.   STANDING

15.     Plaintiff AAPC has Article III standing as an organization to bring suit on behalf of its members.  *See* revised Declaration of Alana Joyce in Support of Standing, attached hereto as Exhibit A; *see also Friends of the Earth v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 181 (2000); *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).

16.     Plaintiff DPO has Article III standing to bring suit as it has a personal stake in the outcome of the action.  *See* revised Declaration of Brad Martin in Support of Standing, attached hereto as Exhibit B; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

17.     Plaintiff PPP has Article III standing to bring suit as it has a personal stake in the outcome of the action.  *See* revised Declaration of Dean Debnam in Support of Standing, attached hereto as Exhibit C; *see also Lujan*, 504 U.S. at 560.

18.     Plaintiff TPF has Article III standing to bring suit as it has a personal stake in the outcome of the action.  *See* revised Declaration of Niger Innis in Support of Standing, attached hereto as Exhibit D; *see also Lujan*, 504 U.S. at 560.

19.     Plaintiff WSDCC has Article III standing to bring suit as it has a personal stake in the outcome of the action.  *See* revised Declaration of Karen Deal in Support of Standing, attached hereto as Exhibit E; *see also Lujan*, 504 U.S. at 560.

## VII.  STATEMENT OF FACTS

20.     Congress passed the TCPA in 1991 as Pub. L. No. 102-243, 105 Stat. 2394 (codified at 47 U.S.C. § 227) to protect telephone subscribers' privacy rights in connection with commercial telephone solicitations.

21.     Congress instructed the FCC to account for the "free speech protections embodied in the First Amendment of the Constitution" when considering the impact of any restrictions on noncommercial communications.  TCPA, Pub. L. 102-243, § 2(13).

22.     The TCPA states:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A)  to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--
…

(iii)  to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a  debt owed to or guaranteed by the United  States;

47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii) (the "cell phone call ban").

6

23.     The TCPA regulations define "emergency purposes" as "calls made necessary in any situation affecting the health and safety of consumers."   *Id.* at (f)(4) (hereinafter the "emergency exemption").

24.     The TCPA defines "automatic telephone dialing system" ("ATDS") as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1).

25.     The FCC, the states, through their attorneys general or otherwise, and private persons, including classes of persons, can sue for actual or statutory damages for violations of the cell phone call ban for $500 or more per telephone call.  *Id.* at (b)(3), (g); 47 U.S.C. § 503.

26.     The TCPA provides that the FCC "shall prescribe regulations to implement the requirements of this subsection …." 47 U.S.C. § 227(b)(2).

27.     In the 1992 Order regarding the implementation of the TCPA, the FCC stated the purpose of its regulations under this subsection:

> This R&O amends part 64 of the Commission's rules by adding § 64.1200 to restrict the use of automatic telephone dialing systems and artificial or prerecorded voice messages for telemarketing purposes or for transmitting unsolicited telephone facsimile advertisements. The rules require that persons or entities making telephone solicitations establish procedures to protect residential subscribers from unwanted solicitations, and set forth exemptions to certain prohibitions under this part …. The rules are intended to impose reasonable restrictions on autodialed or prerecorded voice telephone calls consistent with considerations regarding public health and safety and commercial speech and trade, and to allow consumers to avoid unwanted telephone solicitations without unduly limiting legitimate telemarketing practices.

57 Fed. Reg. 48333 (Oct. 23, 1992).

28.     Since 1992, the FCC and Congress have passed at least six exemptions to the cell phone call ban which apply based on the identity of the caller and/or the content of the exempted calls.

29.    In 2012, the FCC exempted from the cell phone call ban "autodialed or prerecorded message calls by a wireless carrier to its customer when the customer is not charged."  77 Fed. Reg. 34233, 34235 (June 11, 2012) (hereinafter referred to as the "wireless exemption").

30.    In 2014, the FCC exempted from the cell phone call ban prerecorded and ATDS calls for "package delivery notifications to consumers' wireless phones either by voice or text … so long as those calls are not charged to the consumer recipient, including not being counted against the consumer's plan limits on minutes or texts, and comply with the conditions …."  *In the Matter of Cargo Airline Association Petition for Expedited Declaratory Ruling*, 29 FCC Rcd 3432, 3439 (Mar. 27, 2014) (hereinafter referred to as the "package delivery exemption").

31.    In 2014, the FCC exempted from the cell phone call ban prerecorded and ATDS "non-telemarketing voice calls or text messages to wireless numbers … [that] rely on a representation from an intermediary that they have obtained the requisite consent from the consumer."  *In the Matter of GroupMe, Inc. / Skype Communications S.A.R.L.*, 29 FCC Rcd 3442, 3444 (Mar. 27, 2014) (hereinafter referred to as the "intermediary consent exemption").

32.    In 2015, the FCC exempted from the cell phone call ban prerecorded and ATDS "non-telemarketing, healthcare calls that are not charged to the called party" and "for which there is exigency and that have a healthcare treatment purpose …."  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991 et al.*, 30 FCC Rcd 7961, 8930-31 (July 10, 2015) (hereinafter referred to as the "HIPAA exemption").

33.    In 2015, the FCC exempted from the cell phone call ban prerecorded and ATDS calls regarding "(1) 'transactions and events that suggest a risk of fraud or identity theft; (2) possible breaches of the security of customers' personal information; (3) steps consumers can

take to prevent or remedy harm caused by data security breaches; and (4) actions needed to arrange for receipt of pending money transfers.'" *Id.* at 8023 (hereinafter referred to as the "bank and financial exemption")

34.     In 2015, Congress exempted from the cell phone call ban prerecorded and ATDS calls "made solely to collect a debt owed to or guaranteed by the United States". TCPA, Pub. L. No. 114-74, § 301(a) 129 Stat. 588 (2015) (amending 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii)) (hereinafter referred to as the "debt collection exemption").

35.     In 2016, the FCC exempted from the cell phone call ban prerecorded and ATDS calls from federal government officials conducting official business. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991 et al.*, CG Docket No. 02-278, July 5, 2016 at ¶ 12 (hereinafter referred to as the "official federal government business exemption[2]").

### COUNT I
### (The Cell Phone Call Ban is a Content-based Restriction on Speech)

36.     Plaintiffs incorporate by reference the allegations in paragraphs one through 35.

37.     The First Amendment reflects a "profound national commitment" to the principle that "debate on public issues should be uninhibited, robust, and wide-open," and has "consistently commented on the central importance of protecting speech on public issues." *Boos v. Barry*, 485 U.S. 312, 318 (1998).

38.     "[P]olitical speech is at the very core of the First Amendment." *Carey v. Fed. Elec. Comm'n.*, 791 F. Supp. 2d 121, 133-34 (D.D.C. 2011) (citing *Buckley v. Valeo*, 424 U.S. 1, 39 (1976)). "The First Amendment affords the broadest protection to such political expression in order 'to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by people.'" *McIntyre v. Ohio Elec. Comm'n.*, 514 U.S. 334, 346 (1995).

---

[2]    The    FCC    issued    the    full    text    of    its    Declaratory    Ruling,    available    at: http://transition.fcc.gov/Daily_Releases/Daily_Business/2016/db0706/FCC-16-72A1.pdf.

9

39.     The First Amendment to the United States Constitution prohibits discrimination as to the content of speech or the identity of the speaker. *Reed v. Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218, 2227 (2015) ("Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed.").

40.     The debt collection exemption created by Congress and the FCC's exemptions are based on the content of the speech, which includes the identity of the speaker. *U.S. v. Playboy Entm't Group*, 529 U.S. 803, 812 (2000).  Content-based restrictions of protected speech are subject to strict scrutiny. *Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015) ("As a content-based regulation of speech, the anti-robocall statute is subject to strict scrutiny … [u]nder this standard, the government must prove 'that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.'"); *Riley v. Nat'l Fed. of the Blind*, 487 U.S. 781, 800 (1988) ("These more narrowly tailored rules are in keeping with the First Amendment directive that government not dictate the content of speech absent compelling necessity, and then, only by means precisely tailored.")

41.     The Defendants therefore bear the burden of demonstrating that the cell phone call ban is narrowly tailored to further a compelling interest which it is entitled to protect using the least restrictive means available. *Secr'y of the State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 959-61 (1984); *Vill. of Schaumburg v. Citizens for a Better Env't.*, 444 U.S. 620, 636-37 (1980).  The cell phone call ban does not satisfy strict scrutiny.

42.     The TCPA restricts Plaintiffs' fully-protected, political speech whereas the FCC permits prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the wireless exemption. *See* 77 Fed. Reg. at 34235.  By favoring commercial speech over Plaintiffs' political speech, the cell phone call ban

violates the constitutional rights of these political organizations.  *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 513 (1980).

43.    The TCPA restricts Plaintiffs' fully-protected, political speech whereas the FCC permits prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the package delivery exemption.  *See* 29 FCC Rcd at 3435.  By favoring commercial speech over the noncommercial political speech of Plaintiffs, the cell phone call ban violates the constitutional rights of these political organizations.  *See Metromedia,* 453 U.S. at 513.

44.    The TCPA restricts Plaintiffs' fully-protected, political speech whereas the FCC permits prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the intermediary consent exemption.  *See* 29 FCC Rcd at 3444.  By favoring this speech over the noncommercial political speech of Plaintiffs, the cell phone call ban violates the constitutional rights of these political organizations.  *See Metromedia,* 453 U.S. at 513.

45.    The TCPA restricts Plaintiffs' fully-protected, political speech whereas the FCC permits prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the HIPAA exemption.  *See* 30 FCC Rcd at 8031. By favoring this speech over the noncommercial political speech of Plaintiffs, the cell phone call ban violates the constitutional rights of these political organizations.  *See Metromedia,* 453 U.S. at 513.

46.    The TCPA restricts Plaintiffs' fully-protected, political speech whereas the FCC permits prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the bank and financial exemption.  *See* 30 FCC

Rcd at 8024-28.  By favoring commercial speech over the noncommercial political speech of Plaintiffs, the cell phone call ban violates the constitutional rights of these political organizations.  *See Metromedia*, 453 U.S. at 513.

47.    The TCPA restricts Plaintiffs' fully-protected, political speech whereas the TCPA permits prerecorded and ATDS commercial calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the debt collection exemption.  47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii).  By favoring commercial speech over the noncommercial political speech of Plaintiffs, the cell phone call ban violates the constitutional rights of these political organizations.  *See Metromedia,* 453 U.S. at 513.

48.    The TCPA restricts Plaintiffs' fully-protected, political speech whereas the FCC permits prerecorded and ATDS commercial calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the official federal government business exemption.  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991 et al.*, CG Docket No. 02-278, July 5, 2016 at ¶ 12.  By favoring federal government speech over the noncommercial political speech of Plaintiffs, the cell phone call ban violates the constitutional rights of these political organizations.  *See Metromedia*, 453 U.S. at 513.

49.    The official federal government business exemption causes the cell phone call ban to be unconstitutional for two reasons, first, because it is based on the content of the speech involved, and second, because it is based on the identity of the speaker.  *Playboy*, 529 U.S. at 812.

50.    The cell phone call ban is therefore an unconstitutional content-based restriction on Plaintiffs' fully-protected, political speech in violation of the First Amendment.  *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972) ("[A]bove all else, the First Amendment means that

government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.").

## COUNT II
### (The Cell Phone Call Ban is Underinclusive)

51.    Plaintiffs incorporate by reference the allegations in paragraphs one through 50.

52.    A law is underinclusive and thus not narrowly tailored "when it discriminates against some speakers but not others without a legitimate 'neutral justification' for doing so." *Nat'l Fed'n of the Blind v. F.T.C.*, 420 F.3d 331, 345 (4th Cir. 2005) ("Even when the government has a compelling interest for restricting speech, it may not seek to further that interest by creating arbitrary distinctions among speakers that bear no 'reasonable fit' to the interest at hand.").

53.    An underinclusive statute "raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 802 (2011) (holding that a California statute that prohibited the sale or rental of "violent video games" to minors violated the First Amendment because it was underinclusive and did not preclude minors from having access to violent information in other forms).

54.    The cell phone call ban is underinclusive because it exempts commercial prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the wireless exemption. *See* 77 Fed. Reg. at 34235.

55.    The cell phone call ban is underinclusive because it exempts prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the package delivery exemption. *See* 29 FCC Rcd at 3435.

56.    The cell phone call ban is underinclusive because it exempts prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the intermediary consent exemption.  *See* 29 FCC Rcd at 3444.

57.    The cell phone call ban is underinclusive because it exempts prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the HIPAA exemption.  *See* 30 FCC Rcd at 8031.

58.    The cell phone call ban is underinclusive because it exempts prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the bank and financial exemption.  *Id*. at 8024-28.

59.    The cell phone call ban is underinclusive because it exempts commercial prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the debt collection exemption.  *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii).

60.    The cell phone call ban is underinclusive because it exempts commercial prerecorded and ATDS calls or text messages to cell phones (or any service for which the called party is charged) if made pursuant to the official federal government business exemption.  *See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991 et al.*, CG Docket No. 02-278, July 5, 2016 at ¶ 12.

61.    There is no relation between any legitimate government purpose behind the cell phone call ban and the speech banned, regulated, or allowed by it.

62.    Plaintiffs' speech is no more harmful than the speech allowed by the content-based exemptions to the cell phone call ban.

63.     The cell phone call ban is an impermissible means of advancing any legitimate interest of Defendants.  The cell phone call ban is therefore unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief and judgment from this Court:

1.     A preliminary injunction enjoining the enforcement of the cell phone call ban by Defendants, its agents and employees against these Plaintiffs, and others similarly situated;

2.     A permanent injunction enjoining the enforcement of the cell phone call ban by Defendants, its agents and employees against these Plaintiffs, and others similarly situated;

3.     A declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 that the cell phone call ban on its face is unconstitutional as it violates the First Amendment to the United States Constitution;

4.     An award of nominal damages in the amount of $1.00 as a result of Defendants' violation of Plaintiffs' constitutional rights;

5.     An order requiring that Defendants pay all costs, interest, and attorneys' fees as may be incurred with this civil action as allowed by law; and

6.     An order providing such other and further relief as the Court deems just and proper and for the purpose of redressing Plaintiffs' grievances.

Dated: August 5, 2016.

Respectfully Submitted,

/s/ Charles George
Charles George, NC #21003
Wyrick Robbins Yates & Ponton LLP
4101 Lake Boone Trail, Suite 300
Raleigh, NC 27607
919-781-4000
919-781-4865 fax
cgeorge@wyrick.com

William E. Raney, MO #46954 (*pro hac vice*)
Kellie Mitchell Bubeck, MO #65573 (*pro hac vice*)
Copilevitz & Canter, LLC
310 W. 20th Street, Suite 300
Kansas City, MO 64108
816-472-9000
816-472-5000 fax
braney@cckc-law.com
kmitchell@cckc-law.com

**ATTORNEYS FOR PLAINTIFFS**

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| AMERICAN ASSOCIATION OF<br>POLITICAL CONSULTANTS, INC., | ) | |
| | ) | |
| DEMOCRATIC PARTY OF OREGON, INC., | ) | |
| | ) | |
| PUBLIC POLICY POLLING, LLC, | ) | |
| | ) | |
| TEA PARTY FORWARD PAC, and | ) | Civil Action No. 5:16-cv-00252-D |
| | ) | |
| WASHINGTON STATE DEMOCRATIC<br>CENTRAL COMMITTEE, | ) | |
| | ) | |
|        Plaintiffs | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JEFFERSON SESSIONS, in his official capacity<br>as Attorney General of the United States and | ) | |
| | ) | |
| FEDERAL COMMUNICATIONS<br>COMMISSION, a federal agency, | ) | |
| | ) | |
|       Defendants. | ) | |
| _____ | ) | |

**PLAINTIFFS' RESPONSE AND REPLY TO DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN
SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

1

## I.    INTRODUCTION

Please consider once more two telephone calls.  The first is from the Democratic Party urging residents of a given district to vote in the upcoming election.  A volunteer makes the call using an automatic telephone dialing system ("ATDS") to a voter, but the volunteer doesn't know that the number called is a cell phone.  The second is from a debt collector to a debtor concerning a defaulted government-backed mortgage.  This call is also placed using an ATDS, and the only number available is a cell phone number.

The first call is banned by the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii) (the "cell phone call ban").  The second call is not.[1]  The exempt debt collection call has a significant effect on the privacy of the recipient, but it seems likely that the first call would be more welcomed by the recipient.  The TCPA cell phone call ban is therefore a content-based restriction of speech, subject to strict scrutiny under the First Amendment.  It cannot withstand strict scrutiny and is therefore unconstitutional.

## II.    ARGUMENT

When Congress passed the TCPA, it gave the Federal Communications Commission ("FCC") power to create exemptions to its restrictions, including to the TCPA cell phone call ban.  Since 1992, the FCC has created seven exemptions to the TCPA cell phone call ban.

Congress also has the power to create exemptions to the cell phone call ban.  It has done so, for example by including an exemption for any entity placing calls solely collecting debt owed to or guaranteed by the federal government.

---

[1] See discussion of *Brickman v. Facebook, Inc.*, 2017 U.S. Dist. LEXIS 11849 (N.D. Cal. Jan. 27, 2017) ("*Brickman*") and the cell phone call ban debt collection exemption, *infra* at B1.

2

By creating this exemption based on the content of the speech, Congress has caused the TCPA cell phone call ban to be a content-based restriction of speech.  The FCC, in including exemptions based on the content of speech and the identity of speakers, has also caused the cell phone call ban to be a content-based restriction of speech.

Further, because Congress and the FCC have the power to create future content-based exemptions, the TCPA cell phone call ban cannot be cured of its unconstitutionality by striking those exemptions.  Congress and the FCC would still have the power, which they have used and likely intend to use in the future, to create content-based exemptions.  Under this Circuit's ruling in *Cahaly v. LaRosa*, 796 F.3d 399 (4th Cir. 2015) ("*Cahaly*"), the cell phone call ban cannot withstand strict scrituny and is therefore unconstitutional.

### A.    Defendants cannot distinguish *Reed*, as it is undisputed that the exemptions apply based on the content of speech.

Defendants attempt to distinguish *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) ("*Reed*") by claiming that "the lines drawn by the TCPA in no way resemble the lines drawn by the ordinance invalidated in *Reed*."  Defs.' Brief at 9.  That statute was "riddled" with 23 exemptions (here we have seven).  *Id.*  The statute also applied different rules based on the content of signs, e.g. "political" signs subject to one rule, "ideological" signs to another.  *Id.*

The TCPA cell phone call ban, Defendants argue, is different because it was designed by Congress to protect residential "privacy interests" instead of aesthetic ones.  *Id.* at 10.

The language of *Reed* does not tolerate such an argument and gives no indication that its analysis hinges on the differences between residential "privacy interests" and "aesthetic interests".  Rather, under *Reed,* if a statute draws distinctions based on the content of the speech regulated, it is content-based and thus subject to strict scrutiny.  Because the TCPA cell phone call ban draws distinctions based on the message a speaker conveys (or the identity of the speaker), and not just

3

the relationship between the speaker and the recipient, it is a content-based restriction on free speech subject to strict scrutiny. *Reed* at 2227. The purpose behind the statute, of course, is relevant to whether the statute passes strict scrutiny—not whether *Reed* applies or not. *Reed* noted:

> a clear and firm rule governing content neutrality is an essential means of protecting the freedom of speech, even if laws that might seem "entirely reasonable" will sometimes be "struck down because of their content-based nature."

*Id.* at 2231 (citing *City of Ladue* v. *Gilleo*, 512 U.S. 43, 60 (1994) (O'Connor, J., concurring)).

The rule is the same in this Circuit:

> In evaluating the content neutrality of a sign regulation restricting speech, we focus on the Supreme Court's decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015). We recently observed that this decision conflicted with, and therefore abrogated, our Circuit's previous formulation for analyzing content neutrality, in which we had held that "[t]he government's purpose is the controlling consideration."

*Cent. Radio Co. v. City of Norfolk*, 811 F.3d 625, 632 (4th Cir. 2016) (quoting *Cahaly* at 405).

Defendants claim "[t]he TCPA restricts only calls made and messages sent without consent, *see* 47 U.S.C. § 227(b)(1)(A) …." Defs.' Brief at 11. This is wrong. Defendants' error is the entire point of this lawsuit—the content-based exceptions to the TCPA specified in the complaint show that some calls are banned without consent, but some calls from favored speakers or with favored content are allowed with or without consumer consent. Hence, the statute is content-based.

### 1. Congress has given the FCC the power to create content-based exemptions.

The authority granted by Congress to the FCC to create exemptions, including content-based exemptions, is found in the TCPA at 47 U.S.C. § 227(b)(2):

> The Commission shall prescribe regulations to implement the requirements of this subsection. In implementing the requirements of this subsection, the Commission— …

(C) may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights this section is intended to protect;

*Id.*

Severing the existing exemptions will not prevent the FCC from adopting new content-based exemptions in the future.

### 2. The FCC has exercised its power to create content-based exemptions.

Defendants attempt to argue that the FCC's content-based exemptions "are not actually exemptions at all." Defs.' Brief at 14. But whether by FCC order, interpretation, or otherwise, some speakers' calls are exempt based on the speakers' identity or the content of the calls, and some are not. The provisions of the First Amendment are not so easily evaded. Governmental restraint on speech need not fall into familiar or traditional patterns to be subject to constitutional limitations. *Miami Herald Pub. Co., Div. of Knight Newspapers, Inc. v. Tornillo*, 418 U.S. 241, 256 (1974) (citing *Grosjean v. American Press Co.*, 297 U.S. 233, 244-45 (1936)).

The FCC has created exemptions that favor certain speakers over others, including:

- calls made by wireless carriers in the wireless carrier exemption, *see* 77 Fed. Reg. at 34235;

- calls made by intermediaries in the intermediary consent exemption, *see* 29 FCC Rcd at 3444; and

- calls made by federal government officials in the official federal government business exemption, *see* 31 FCC Rcd at 7400.

Ptfs.' Brief in Support of Motion for Summ. J., Dkt. 31 (May 19, 2017) ("Ptfs.' Brief") at 18.

5

The FCC has also created exemptions that favor certain messages with certain content over others, including:

- package delivery notifications in the package delivery exemption , *see* 29 FCC Rcd at 3439;

- healthcare-related calls in the HIPAA exemption, *see* 30 FCC Rcd at 8030-31;

- fraud, security and money transfer notifications in the bank and financial exemption, *see id*. at 8023; and

- official federal government business in the official federal government business exemption, *see* 31 FCC Rcd at 7400.

Ptfs.' Brief at 17.

There is no reason to believe the FCC will refrain from creating future content-based exemptions, by order, interpretation, or otherwise.

### 3.      Congress believes it has the power to create content-based exemptions.

Congress, similarly, believes it has the power to create content-based exemptions favoring certain speakers or messages.

Despite claims of Defendants, the debt collection exemption is not limited to calls to debtors of government or government backed debts.  Pub. L. No. 114-74, 129 Stat. 584 (Nov. 2, 2015) at § 301(a), *Brickman* at *26.

Congress knew how to limit the TCPA's application in some respects to calls to certain people.  For example, the "established business relationship" is part of an exemption to the national "do-not-call" list. It is specifically limited to a relationship between a caller and a specific residential subscriber.

6

The term "established business relationship", for purposes only of subsection (b)(1)(C)(i), shall have the meaning given the term in section 64.1200 of title 47, Code of Federal Regulations, as in effect on January 1, 2003, except that--

> (A)  such term shall include a relationship between a person or entity and a business subscriber subject to the same terms applicable under such section to a relationship between a person or entity and a residential subscriber; and

> (B)  an established business relationship shall be subject to any time limitation established pursuant to paragraph (2)(G)[)].

47 U.S.C. § 227(a)(2).

The FCC's regulation then specifies that an established business relationship means:

> a prior or existing relationship formed by a <u>voluntary two-way communication between a person or entity and a residential subscriber</u> with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party…

47 C.F.R. § 64.1200(f)(5) (emphasis added).

The debt collection exemption contains no such limitation to calls to a specific person (e.g. the debtor) and could apply to any call to any person, so long as the call is made solely to collect a government or government backed debt, e.g. employment verification, asset location, etc.  There are likely tens of thousands of companies that issue government backed debt, including small business loans, student loans, mortgages, etc.  These companies' collection calls are allowed, while other debt collectors' calls are banned, as are the fully-protected political calls placed by Plaintiffs.

### 4.    Severing the existing exemptions does not cure this problem.

Severance of the content-based exemptions as Defendants' argue is not a suitable cure for the cell phone call ban's unconstitutionality.  *See* Defs.' Brief at 17-20.  Severance does not solve

the problem of the FCC and Congress's existing and actualized ability to create future content-based exemptions.

Congress's ability to amend the TCPA is ongoing.  Congress has amended the TCPA six times since it was first passed in 1991, Pub. L. No. 102-243 (Dec. 20, 1991), most recently creating the debt collection exemption to the cell phone call ban as part of the Bipartisan Budget Act of 2015 Pub. L. No. 114-74 (Nov. 2, 2015). As explained, Congress has given the FCC power to create future exemptions.  *See* 47 U.S.C. § 227(b)(2).

Severance of the existing content-based exemptions would not cure the cell phone call ban's unconstitutionality and contradicts long-standing First Amendment jurisprudence that more speech, rather than less speech, is the goal of this constitutional protection.  *See Whitney v. Cal.*, 274 U.S. 357 (1927).  "If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence."  *Id*. at 377.

The proper remedy is to allow more speech and speakers by striking the cell phone call ban and allowing the FCC or Congress to use other narrowly tailored, or content-neutral, means to protect residential privacy.

    **B.**    **Defendants rely on TCPA cases which did not consider its exemptions or are otherwise distinguishable.**

        **1.**    **Other cases involved challenges to the whole statute, not merely the cell phone call ban.**

Although Defendants rely on some cases which comment on the constitutionality of the TCPA, they involved challenges to other sections of the law, predate *Reed*, or did not consider the exemptions to the cell phone call ban involved in this case.

        **a.**    ***Gomez v. Campbell-Ewald Co.***

8

While *Gomez v. Campbell-Ewald*, 768 F.3d 871 (9th Cir. 2014) ruled the TCPA was a reasonable time, place, and manner restriction, the case did not consider the exemptions to the cell phone call ban highlighted in this matter. Nor did the case apply the logic of *Reed* to the TCPA as it had not been decided at the time of the 9th Circuit's decision and because the exemptions were not discussed. *Id*. at 873.

### b.    *Moser v. Fed. Commc'n Comm'n*.

*Moser v. Fed. Commc'n Comm'n*, 46 F.3d 970 (9th Cir. 1995) involved a challenge to the general ban on most prerecorded telephone calls to residential telephone lines found in the TCPA. *See* 47 U.S.C. § 227(b)(1). Calls by tax exempt nonprofit organizations were exempt from the ban based on FCC regulations adopted on September 17, 1992. *Id*. at 973. *Moser* concluded the restriction was content-neutral, but the case predates *Reed* and considered a restriction that did not have voluminous content-based and speaker identity based exemptions that post-dated its decision but which are found in this case.

### c.    *Brickman v. Facebook, Inc.*

Defendants rely extensively on *Brickman* to the extent it ruled the government debt collection exemption may be severable, but Defendants simultaneously disagree with *Brickman,* claiming the exemption is limited because "such calls would only be made to those who owe a debt to the federal government." Defs.' Brief at 18, 25 (citing *Brickman* at *8).

This ignores the text of the exemption. Congress inserted the language "unless such call is made solely to collect a debt owed to or guaranteed by the United States" after "charged for the call" in the cell phone call ban. Pub. L. No. 114-74 amending 47 U.S.C. § 227(b)(1).

In no way is this language limited to calls to debtors or calls by the Government. Calls could be made to acquaintances of debtors, employers, or numerous other persons from whom

9

private debt collectors must collect government debt.  Defendant's discussion at n. 8 belies the plain language of the statute, which is not limited to calls to the debtor or "those who have a legal relationship to the debt."  Defs.' Brief at 19, n.8.  Many calls could have a sole purpose to collect a debt, yet not be to the debtor.

*Brickman* did not consider any of the FCC enacted content-based exemptions to the TCPA when it concluded "the TCPA's exemptions leave negligible damage to the statute's interest in protecting privacy."  *Id*. at *27.  To the contrary, the exemptions show substantial favoring of commercial speech over Plaintiffs' fully protected speech, allowing thousands of commercial debt collectors to place calls to debtors and other persons relating to collection of that debt, allowing package shippers to call any recipient of packages regardless of relationship with the sender of the package or the shipper, and allowing cell phone companies to contact customers for any purpose, including sales, political advocacy, etc. The exemptions show favoring of some debt collection calls over others despite them having an identical effect on residential privacy. The exemptions show that wireless carriers can contact their customers for sales purposes, or any other purposes, while other companies cannot make similar sales calls to their customers.

Surely these calls cause at least the same, if not more, intrusion into consumers' privacy than a 'get out the vote' or political polling call.

When Congress intended the communication to involve a relationship solely with a customer, it defined it as such, e.g. established business relationship.  47 U.S.C. § 227(a)(2).

Nor is the government debt exemption solely related to government speech as Defendants argue.  Defs.' Brief at 25.  Government backed debt includes mortgages and student loans, as well as debts owed directly to the government, such as taxes.  Numerous corporate entities issue and

own mortgages and student loans, and those who call seeking to collect those debts are not government actors such that the speech is government speech.

Further, simply because a debt is backed by the government, it does not necessarily follow that collection calls by a commercial entity collecting that debt are "government speech".  Such an argument would mean that any marketer of student loans or government backed mortgages was exempt from the TCPA, the Telemarketing Sales Rule ("TSR"), or Federal Trade Commission jurisdiction, etc.  This simply cannot be the case.  *See* e.g. *United States v. Mortgage Investors Corp. of Ohio*, No. 13-cv-01647 (M.D. Fla. July 17, 2013) (lawsuit against seller of Veterans Administration guaranteed loans), attached hereto as Exhibit A.

Finally, the TCPA cell phone call ban is underinclusive, and therefore not narrowly tailored to further residential privacy.  Because the debt collection exemption applies to collectors of government backed debt and not collectors of other debt, the TCPA cell phone call ban cannot be narrowly tailored to further residential privacy.  For example, one debt collection call to collect a defaulted Federal Housing Authority loan would be legal, but another, from the exact same lender to the same debtor collecting a defaulted conventional loan would be illegal.  This underinclusive dichotomy shows the true purpose of the ban is to favor some speech over other speech—the very ill strict scrutiny and First Amendment jurisprudence exist to combat.

### 2.    Other district court cases relied upon by Defendants are distinguishable from this challenge.

#### a.    *Mey v. Venture Data, LLC*

The ruling in *Mey v. Venture Data, LLC*, 2017 WL 1193072 (N.D. W.V. Mar. 29, 2017), is based on an erroneous assumption and is distinguishable from this case.

First, the court concluded that "[t]he TCPA is a permissible content-neutral regulation on its face" based on the incorrect notion that the statute "broadly limits 'any person' from using an

[ATDS] or an artificial or prerecorded voice 'to make any call' to a cellular telephone line." *Id.* at *17. Addressing the statutory exemptions, the court held that all three exceptions[2] were not content-based but based on the relationship of the speaker and the recipient of the message. *Id.*

But this is incorrect. The TCPA exempts calls made "solely to collect a debt owed to or guaranteed *by the United States*." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). If this exemption were based only on the relationship of the speaker and the recipient of the message, it would include all calls to collect a debt, not just those owed to or guaranteed by the United States. The debt collection exemption favors calls from some speakers that include certain content, i.e. government-back debt only, while prohibiting calls from other debt collectors.

The court's argument that *Cahaly* is distinguishable similarly fails. *Mey* relies on the fact that the South Carolina statute expressly makes facial content distinctions, *see* S.C. Code Ann. § 16-17-446(A), and by contrast, states that the TCPA does not "target" political speech or any other type of speech on its face. *Mey*, 2017 WL 1193072 at *17. But the statutory exemption for calls made "solely to collect a debt owed to or guaranteed *by the United States*" shows this is incorrect. *See United States v. Playboy Entm't Group*, 529 U.S. 803, 812 (2000) ("Laws designed or intended to suppress or restrict the expression of specific speakers contradict basic First Amendment principles.").

Similarly, *Mey* fails to address the FCC's exemptions that favor certain messages with certain content, i.e. calls made by wireless carriers, package delivery companies, third-party-intermediaries, health care companies, financial institutions, certain debt collectors, and calls relating to federal government business. *See* 77 Fed. Reg. at 34235; 29 FCC Rcd at 3439; 29 FCC

---

[2] The TCPA generally applies to all calls with three exceptions: (1) calls "for emergency purposes;" (2) calls made "with the prior express consent of the called party;" and (3) calls made "to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A).

12

Rcd at 3444; 30 FCC Rcd at 8030-31; 30 FCC Rcd at 8023; 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii); 31 FCC Rcd at 7400.

Finally, the court ruled on the constitutionality of the TCPA as applied to the facts specific to the *Mey* case. *Mey*, 2017 WL 1193072 at *16-18. Here, Plaintiffs challenge the constitutionality of the cell phone call ban on its face. Thus, *Mey* is distinguishable from this case.

### b.    *Strickler v. Bijora, Inc.*

*Strickler v. Bijora, Inc.*, 2012 U.S. Dist. LEXIS 156830 (N.D. Ill. Oct. 30, 2012) is distinguishable as it involved the question of whether the cell phone call ban applied to text messages and if so, whether that application was unconstitutional. *Id.* at *17.

### c.    *Wreyford v. Citizens for Transp. Mobility, Inc.*

*Wreyford v. Citizens for Transp. Mobility, Inc.*, 957 F. Supp. 2d 1378 (N.D. Ga. 2013) also evaluated the TCPA cell phone call ban as a content-neutral time, place, and manner restriction relying on *Moser*. *Id.* at 1380.

### d.    *Woods v. Santander Consumer USA Inc.*

*Woods v. Santander Consumer USA Inc.*, 2017 U.S. Dist. LEXIS 47256 (N.D. Ala. Mar. 30, 2017) reviewed the TCPA cell phone call ban as a content-neutral restriction on speech. It did not consider the exemptions to the cell phone call ban. *Id.* at *6.

### 3.    Other cases relied upon by Defendants, however, have nothing to do with the TCPA.

### a.    *Patriotic Veterans, Inc. v. Zoeller.*

*Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303 (7th Cir. 2017) involved a challenge to Indiana's prerecorded telephone call statute by a nonprofit political group. Although the statute had exemptions, they all hinged on the relationship between the caller and the recipient of the call rather than the content of the message. *Id.* at 304.

13

         **b.**     ***Van Bergen v. Minnesota.***

*Van Bergen v. Minn.*, 59 F.3d 1541 (8th Cir. 1995) involved a challenge to a Minnesota law regulating the use of prerecorded messages by a candidate for Minnesota governor.  Although the case discussed preemption by the TCPA, it did not question or review its constitutionality.  *Id*. at 1545-46.

## III.    CONCLUSION

Plaintiffs respectfully request that this Court declare the TCPA cell phone call ban to be an unconstitutional, content-based restriction of speech, enjoin its enforcement, and grant such other relief as the Court deems just and proper.

Dated: July 5, 2017                Respectfully Submitted,

                               /s/ *Charles George*

                            WYRICK ROBBINS YATES & PONTON LLP
                            Charles George, NC #21003
                            4101 Lake Boone Trail, Suite 300
                            Raleigh, North Carolina 27607
                            Telephone: (919) 781-4000
                            Facsimile: (919) 781-4865
                            Email: cgeorge@wyrick.com

                            -and-

                             /s/ *William E. Raney*

                            COPILEVITZ & CANTER, LLC
                            William E. Raney, MO #46954 (*Pro hac vice*)
                            Kellie Mitchell Bubeck, MO #65573 (*Pro hac vice*)
                            310 W. 20th Street, Suite 300
                            Kansas City, Missouri 64108
                            Telephone: (816) 472-9000
                            Facsimile: (816) 472-5000
                            Email: braney@cckc-law.com
                                    kmitchell@cckc-law.com

*Attorneys for Plaintiffs*

15

# EXHIBIT D

No. 19-631

# In the
# Supreme Court of the United States

WILLIAM P. BARR, ATTORNEY GENERAL;
FEDERAL COMMUNICATIONS COMMISSION,

*Petitioners*,

v.

AMERICAN ASSOCIATION OF POLITICAL
CONSULTANTS, INC., ET AL.,

*Respondents*.

ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

## BRIEF FOR RESPONDENTS
## IN SUPPORT OF CERTIORARI

WILLIAM E. RANEY
KELLIE MITCHELL BUBECK
COPILEVITZ, LAM &
  RANEY, P.C.
310 W. 20th Street
Suite 300
Kansas City, MO 64108
(816) 472-9000

ROMAN MARTINEZ
  *Counsel of Record*
ANDREW B. CLUBOK
SUSAN E. ENGEL
TYCE R. WALTERS
SAMIR DEGER-SEN
GREGORY B. IN DEN BERKEN
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
roman.martinez@lw.com

*Counsel for Respondents*

## QUESTION PRESENTED

The Telephone Consumer Protection Act (TCPA) imposes liability of up to $1,500 for any call or text message made or sent without prior express consent to a cell phone using an automatic telephone dialing system or an artificial or prerecorded voice. That broad prohibition on speech, however, is subject to a host of exceptions, including for calls made "to collect a debt owed to or guaranteed by the United States."

In the decision below, the Fourth Circuit recognized that the TCPA's restriction on speech is content-based and not narrowly tailored to any compelling government interest. Accordingly, the court held that the statute violates the First Amendment. But instead of invalidating the TCPA's ban on speech, the court took the extraordinary step of rewriting the statute to prohibit *more* speech. Specifically, the Fourth Circuit purported to fix the constitutional defect by severing the government-debt exception from the statute, while leaving all of the statute's unconstitutional speech restrictions intact.

The question presented is:

Whether the TCPA's automated-call prohibition is an unconstitutional content-based restriction of speech, and if so whether the Fourth Circuit erred in addressing the constitutional violation by broadening the prohibition to abridge more speech.

ii

## RULE 29.6 STATEMENT

Respondent Public Policy Polling, LLC has no parent corporation, and no publicly held company owns 10 percent or more of its stock. The remaining respondents are nonprofit organizations.

iii

## LIST OF RELATED PROCEEDINGS

Pursuant to Supreme Court Rule 14.1(b)(iii), respondents state that there are no proceedings directly related to the case in this Court.

iv

# TABLE OF CONTENTS

**Page**

QUESTION PRESENTED ......................................... i

RULE 29.6 STATEMENT.......................................... ii

LIST OF RELATED PROCEEDINGS ..................... iii

TABLE OF AUTHORITIES ...................................... v

STATEMENT OF THE CASE .................................. 3

    A. Statutory and Regulatory Background .......... 3

    B. Factual and Procedural Background.............. 6

ARGUMENT ........................................................... 12

    A. The Constitutional Issue Warrants
       Review............................................................ 12

    B. The Remedial Issue Warrants Review ......... 17

CONCLUSION....................................................... 27

v

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Arkansas Writers' Project, Inc. v. Ragland*,
    481 U.S. 221 (1987)...................................17, 20, 21

*Beckerman v. City of Tupelo*,
    664 F.2d 502 (5th Cir. Unit A. Dec.
    1981).....................................................................21

*Bridgeview Health Care Center, Ltd. v.
    Clark*,
    816 F.3d 935 (7th Cir. 2016)...................................6

*Carey v. Brown*,
    447 U.S. 455 (1980)...............................................21

*City of Cincinnati v. Discovery Network,
    Inc.*,
    507 U.S. 410 (1993)...............................................21

*Dana's Railroad Supply v. Attorney
    General*,
    807 F.3d 1235 (11th Cir. 2015)............................22

*Dimmitt v. City of Clearwater*,
    985 F.2d 1565 (11th Cir. 1993).......................21, 23

*Duguid v. Facebook, Inc.*,
    926 F.3d 1146 (9th Cir. 2019)............10, 11, 16, 23

*First National Bank of Boston v. Bellotti*,
    435 U.S. 765 (1978)...............................................21

vi

## TABLE OF AUTHORITIES—Continued

Page(s)

*Free Enterprise Fund v. Public Co.*
  *Accounting Oversight Board,*
  561 U.S. 477 (2010)........................................17, 18

*Gallion v. United States,*
  772 F. App'x 604 (9th Cir. 2019) ..................11, 23

*Greater New Orleans Broadcasting*
  *Association v. United States,*
  527 U.S. 173 (1999)..............................................21

*Iancu v. Brunetti,*
  139 S. Ct. 2294 (2019).......................................2, 12

 *Italian Colors Restaurant v. Becerra,*
  878 F.3d 1165 (9th Cir. 2018).............................15

*Lucia v. SEC,*
  138 S. Ct. 2044 (2018)..........................................24

*Marks v. Crunch San Diego,*
  904 F.3d 1041 (9th Cir. 2018), *cert.*
  *dismissed,* 139 S. Ct. 1289 (2019) ......................10

*Matthews v. Town of Needham,*
  764 F.2d 58 (1st Cir. 1985) ..................................21

*McCullen v. Coakley,*
  573 U.S. 464 (2014)..............................................13

*Metromedia, Inc. v. City of San Diego,*
  453 U.S. 490 (1981)..............................................15

vii

## TABLE OF AUTHORITIES—Continued

Page(s)

*Minneapolis Star & Tribune Co. v.*
  *Minnesota Commissioner of Revenue*,
  460 U.S. 575 (1983)...............................................21

*Morse v. Frederick*,
  551 U.S. 393 (2007)...............................................6

*Police Department of Chicago v. Mosley*,
  408 U.S. 92 (1972)...............................................21

*Rappa v. New Castle County*,
  18 F.3d 1043 (3d Cir. 1994) .....................21, 22, 24

*Reed v. Town of Gilbert*,
  135 S. Ct. 2218 (2015).................................*passim*

*Republican Party of Minnesota v. White*,
  536 U.S. 765 (2002)...............................................15

*Shamblin v. Obama for America*,
  No. 8:13-cv-2428-T-33TBM, 2015 WL
  1754628 (M.D. Fla. Apr. 17, 2015) .......................6

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011)...............................................21

*Thomas v. Chicago Park District*,
  534 U.S. 316 (2002)...............................................15

*Turner Broadcasting System, Inc. v. FCC*,
  512 U.S. 622 (1994)...............................................14

*Willson v. City of Bel-Nor*,
  924 F.3d 995 (8th Cir. 2019)...............................21

viii

## TABLE OF AUTHORITIES—Continued

Page(s)

### ADMINISTRATIVE DECISIONS

*Cargo Airline Association Petition for
    Expedited Declaratory Ruling*, *Rules
    and Regulations Implementing the
    Telephone Consumer Protection Act of
    1991*, Order, CG Docket No. 02-278, 29
    FCC Rcd. 3432 (2014) ...........................................5

*Rules and Regulations Implementing the
    Telephone Consumer Protection Act of
    1991*, Declaratory Ruling, CG Docket
    No. 02-278, 31 FCC Rcd. 7394 (2016) ..................4

*Rules and Regulations Implementing the
    Telephone Consumer Protection Act of
    1991*, Declaratory Ruling and Order, CG
    Docket No. 02-278, WC Docket No. 07-
    135, 30 FCC Rcd. 7961 (2015) ..........................5, 6

### CONSTITUTIONAL AND STATUTORY PROVISIONS

U.S. Const. amend. I ................................................18

47 U.S.C. § 153(39)...................................................4

47 U.S.C. § 227(a)(1) ................................................3

47 U.S.C. § 227(b)(1) ................................................4

47 U.S.C. § 227(b)(1)(A) .......................................4, 16

47 U.S.C. § 227(b)(1)(A)(iii)..............................3, 9, 18

ix

## TABLE OF AUTHORITIES—Continued

**Page(s)**

47 U.S.C. § 227(b)(2)(C) ............................................................4

47 U.S.C. § 227(b)(3) ..................................................................5

47 U.S.C. § 227(g)(1) ..................................................................5

47 U.S.C. § 227(g)(3) ..................................................................5

47 U.S.C. § 227(g)(7) ..................................................................5

47 U.S.C. § 608 ........................................................................19

## OTHER AUTHORITIES

Brooke Conkle et al., *Dissecting The
    Inherent Tension In Today's TCPA
    Landscape*, Law360 (Aug. 5, 2019) ......................6

Alexis Kramer, *Facebook Robocall Case
    Gives Justices Shot to Define Autodialer*,
    Bloomberg L. News (Oct. 28, 2019) ....................26

Stuart L. Pardau, *Good Intentions and the
    Road to Regulatory Hell: How the TCPA
    Went from Consumer Protection Statute
    to Litigation Nightmare*, 2018 U. Ill. J.L.
    Tech. & Pol'y 313 (2018) ........................................6

S. Rep. No. 102-178 (1991), *reprinted in*
    1991 U.S.C.C.A.N. 1968 ........................................5

x

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

*WebRecon Stats for Dec 2017 & Year in Review*, WebRecon LLC, https://webrecon.com/webrecon-stats-for-dec-2017-year-in-review/ (last visited Dec. 3, 2019)...........................................................5

## BRIEF FOR RESPONDENTS

Respondents agree with the Government that certiorari should be granted. This case involves questions of far-reaching importance regarding (1) the constitutionality of a frequently litigated Act of Congress, and (2) the appropriate remedy when a content-based speech restriction violates the First Amendment. Although the Fourth Circuit correctly held that the statute at issue is unconstitutional, the court nonetheless refused to invalidate the challenged speech restriction or provide respondents any meaningful relief. Instead, the court "severed" an *exception* to the speech restriction, thereby outlawing additional speech while leaving the unconstitutional speech prohibition intact. The Fourth Circuit's constitutional holding is correct, but its severability analysis is profoundly wrong and requires this Court's urgent attention. Certiorari is warranted on both issues.

The Telephone Consumer Protection Act (TCPA) is one of the most frequently litigated statutes in the federal courts, with thousands of new cases, alleging billions of dollars in damages, filed each year. The TCPA contains a sweeping prohibition on certain types of automated calls made to cellular telephones. But that restriction is subject to multiple, content-based exceptions for speech that the government favors—including a gaping exception for calls made to collect any form of government-backed debt, and a total exemption for any automated calls made by federal, state, or local government entities.

Respondents are direct participants in the American political process who wish to use automatic-call technology to engage in political speech at the

2

core of the First Amendment. For that reason, they challenged the TCPA's speech restrictions as unconstitutional. The Fourth Circuit properly held that the TCPA violates the First Amendment because it discriminates among types of speech based on content and cannot satisfy strict scrutiny. But instead of striking down the unconstitutional speech restriction, the Fourth Circuit crafted an extraordinary "remedy" by severing the government-debt exception from the statute. So the court's solution to the First Amendment violation was to make *more* speech unlawful.

Because the decision below invalidated a federal statute, the Government rightly asserts that this Court's traditional criteria for certiorari support review of the Fourth Circuit's constitutional holding. *See, e.g., Iancu v. Brunetti*, 139 S. Ct. 2294, 2298 (2019). That is so even though that holding is entirely correct. As the Fourth Circuit concluded, the TCPA's automated-call ban "constitutes an unconstitutional content-based restriction on speech," is "fatally underinclusive," and thus "fails to satisfy strict scrutiny." Pet. App. 16a, 21a-22a.

But the Fourth Circuit's remedial holding is fundamentally wrong, and—as the Government recognizes—it too warrants this Court's review in this case. Under settled principles of law, when a content-based restriction on speech violates the First Amendment, the proper remedy is to invalidate that restriction. *See, e.g.*, *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2231-32 (2015). The Fourth Circuit's contrary decision to leave the restriction intact—but to sever and invalidate a speech-promoting *exception* to the restriction—turns constitutional law on its head. The First Amendment does not allow courts to

3

rewrite laws to ban more speech.  The Fourth Circuit's severability holding conflicts with countless decisions of this Court and various federal courts of appeals.  It also entirely undermines the incentives for litigants to challenge unconstitutional content-based speech restrictions in the first place.

The Fourth Circuit's extraordinary decision to hold an act of Congress unconstitutional, but then deny the challengers any relief by rewriting the statute to ban more speech, plainly merits this Court's review in this case.  And because the pending petition in *Facebook, Inc. v. Duguid*, No. 19-511 (filed Oct. 17, 2019), raises a related and independently certworthy statutory question, the Court should grant certiorari and hold oral argument in that case as well.

## STATEMENT OF THE CASE

### A. Statutory and Regulatory Background

1. The TCPA makes it "unlawful" to call a cellphone using either an "automatic telephone dialing system" (ATDS) or an "artificial or prerecorded voice," unless that call is made with the prior express consent of the recipient.  47 U.S.C. § 227(b)(1)(A)(iii).  The statute defines an ATDS as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." *Id.* § 227(a)(1).

The TCPA provides multiple exceptions to its ban on speech using automated technology.  Most saliently, it exempts calls "made solely to collect a debt owed to or guaranteed by the United States." *Id.* § 227(b)(1)(A)(iii).  That broad category encompasses a vast array of privately issued student loans, mortgages, veterans' loans, and farm loans.  Under

4

this government-debt exception, private debt collectors are allowed to make calls without consent using autodialing or prerecorded/artificial voice technology so long as the call is for the collection of a private government-backed debt or a debt owed to the government itself.  So, for example, while a call using an ATDS to collect a government-backed mortgage debt or a government-backed student loan debt is permitted, an otherwise identically worded call to discuss the collection of either of those debts from a private lender, or to discuss any other topic, is prohibited.

The TCPA also explicitly exempts calls "made for emergency purposes."  47 U.S.C. § 227(b)(1)(A).  And the statute implicitly exempts all calls made by governmental entities—including state and local governmental entities—by limiting its coverage to a "person*," id.* § 227(b)(1), which is defined as any "individual, partnership, association, joint-stock company, trust, or corporation," *see id.* § 153(39). The Federal Communications Commission (FCC) has interpreted this exemption to extend to government contractors. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, CG Docket No. 02-278, 31 FCC Rcd. 7394, 7395-96, 7398-99 ¶¶ 3, 10-11 (2016).

Finally, the statute provides that the FCC "may, by rule or order, exempt from" liability any "calls to a telephone number assigned to a cellular telephone service that are not charged to the called party."  47 U.S.C. § 227(b)(2)(C).  Under this provision, the FCC has exempted numerous categories of calls on the basis of content.  For instance, certain healthcare-related calls (such as medical appointment reminders and prescription reminders) are exempted, as are

5

package-delivery notifications and calls relating to bank transfers. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order (2015 FCC Order), CG Docket No. 02-278, WC Docket No. 07-135, 30 FCC Rcd. 7961, 8024-28, 8031-32 ¶¶ 129-38, 146-48 (2015); *Cargo Airline Association Petition for Expedited Declaratory Ruling*, *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Order, CG Docket No. 02-278, 29 FCC Rcd. 3432, 3436-38 ¶¶ 13-18 (2014).

The TCPA is enforceable by the FCC and state attorneys general, and it also creates a private right of action that carries substantial penalties. 47 U.S.C. § 227(b)(3), (g)(1), (g)(3), (g)(7). A violation of the statute is subject to an automatic $500 statutory penalty per call, with treble damages available "[i]f the court finds that the defendant willfully or knowingly" committed the violation. *Id.* § 227(b)(3).

2. For almost 20 years after its enactment in 1991, the TCPA lay relatively dormant. *See* S. Rep. No. 102-178, at 2 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1969. But over the last decade, litigation under the statute has exploded. Between 2009 and 2016, there was an almost 50-fold increase in the number of TCPA cases filed, from fewer than 100 in 2009 to 4,840 in 2016.[1] This "skyrocketing" docket has led the FCC's current chairman to characterize the TCPA as the "poster child for lawsuit

---

[1] *WebRecon Stats for Dec 2017 & Year in Review*, WebRecon LLC, https://webrecon.com/webrecon-stats-for-dec-2017-year-in-review/ (last visited Dec. 3, 2019).

6

abuse." 2015 FCC Order, 30 FCC Rcd. at 8073 (Pai, Comm'r, dissenting).

Statutory damages of up to $1,500 per individual call have made the TCPA "a national cash cow for plaintiff's attorneys." *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 941 (7th Cir. 2016) (citation omitted). One recent class action, for instance, resulted in a jury award of $925 million. *See* Brooke Conkle et al., *Dissecting The Inherent Tension In Today's TCPA Landscape*, Law360 (Aug. 5, 2019). And TCPA actions regularly settle for tens of millions of dollars. *See* Stuart L. Pardau, *Good Intentions and the Road to Regulatory Hell: How the TCPA Went from Consumer Protection Statute to Litigation Nightmare*, 2018 U. Ill. J.L. Tech. & Pol'y 313, 322 (2018) (citing statistics).

TCPA suits have not only targeted for-profit businesses. They have also sought to penalize the dissemination of information from a wide array of nonprofits, religious organizations, and political entities as well. Indeed, American political campaigns are now routinely sued in TCPA class actions. *See, e.g., Shamblin v. Obama for Am.*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1754628, at *1 (M.D. Fla. Apr. 17, 2015); *Thorne v. Donald J. Trump for President, Inc.*, No. 1:16-cv-4603 (N.D. Ill. filed Apr. 25, 2016). The TCPA thus directly targets non-government speech of virtually every type, including "[p]olitical speech" that is "'at the core of what the First Amendment is designed to protect.'" *Morse v. Frederick*, 551 U.S. 393, 403 (2007) (citation omitted).

## B. Factual and Procedural Background

1. Respondents are a collection of entities whose core function is to participate in the American

7

political process, including by disseminating political
speech in connection with federal, state, and local
elections.

Respondent American Association of Political
Consultants, Inc. (AAPC) is a bipartisan trade
association of political and public affairs
professionals, including consultants, fundraisers, and
pollsters. AAPC's members make calls to solicit
candidate donations, conduct polls on political and
governmental issues, and organize "get out the vote"
efforts. C.A.J.A. 158.[2] Respondent Democratic Party
of Oregon works to coordinate, organize, and elect
political candidates by making calls to registered
voters, offering voters information to help with the
voting process, and encouraging voters to return their
ballots and vote for Democratic candidates. *Id.* at 142
¶ 9. Respondent Washington State Democratic
Central Committee likewise works to elect Democrats
to office—in part by making calls to registered voters
to advise on issues and to solicit political donations.
*Id.* at 143-44 ¶ 12. And Respondent Public Policy
Polling tracks public opinion on behalf of politicians,
political organizations, unions, and others. *Id.* at 143
¶ 10.

Respondents believe that their political activities
would be aided by using automated technology to
reach a greater number of citizens in a more cost-
effective manner. *Id.* at 159 ¶ 11, 162 ¶ 8, 174 ¶ 8.
But they recognize that many of their activities could
run afoul of Section 227(b)(1)(A)(iii) and risk $1,500

---

2   "C.A.J.A." refers to Joint Appendix, No. 18-1588 (4th Cir.
filed July 3, 2018).

8

in statutory damages for every single call or text message made or sent.

2. In 2016, respondents initiated this declaratory judgment action against the Attorney General and the FCC. They asserted that the TCPA's content-based ban on protected speech violates the First Amendment, and they sought declaratory relief as well as an injunction restraining the Government from enforcing the speech ban against them. *See, e.g.*, C.A.J.A. 141 ¶ 7, 148-54 ¶¶ 36-663, 238-39, 243, 248, 250-51. In explaining why the restriction is unconstitutional, respondents pointed to the various exceptions—including the government-debt exception—directly undermining the Government's claim that the automated-call ban advances a compelling interest. *See, e.g.*, *id.* at 141, 149, 152-54, 238-39, 243, 266, 289-96, 379-84.

The district court concluded that the TCPA's prohibition on speech is content-based and thus subject to strict scrutiny. Pet. App. 33a-35a. But it then held that the statute survives strict scrutiny, because in its view the restriction is narrowly tailored to the government's interest in residential privacy. *Id.* at 35a-38a. The court further held that the "TCPA's government-debt exception is a narrow exception to further a compelling interest" in collecting government-backed debts. *Id.* at 37a. The court therefore granted summary judgment to the Government. *Id.* at 42a.

3. On appeal, the Fourth Circuit agreed with the district court and respondents that the TCPA's automated-caller provision employs content-based distinctions and thus triggers strict scrutiny. Pet. App. 12a. In doing so, the court applied this Court's recent decision in *Reed*, which reaffirmed that a

9

statutory restriction on speech is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 11a (quoting 135 S. Ct. at 2227). The court explained that Section 227(b)(1)(A)(iii) "facially distinguishes between phone calls on the basis of their content." *Id.* at 12a. Specifically, whereas calls made to cell phones "'solely to collect a debt owed to or guaranteed by the United States' do *not* violate the automated call ban," calls "that deal with other subjects—such as efforts to collect a debt neither owed to nor guaranteed by the United States—. . . *are* prohibited by the automated call ban." *Id.* (emphasis added) (quoting 47 U.S.C. § 227(b)(1)(A)(iii)).

The court next concluded that the provision "fails strict scrutiny review," *id.* at 16a, because "the debt-collection exemption does not further the purpose of the automated call ban in a narrowly tailored fashion," *id.* at 17a. It noted that the exception's "expansive reach" "subverts the privacy protections underlying the ban" insofar as it "authoriz[es] many of the intrusive calls that the automated call ban was enacted to prohibit." *Id.* at 16a, 18a; *see id.* at 16a (describing speech restriction as "fatally underinclusive").[3]

The Fourth Circuit then turned to the question of remedy. Strangely, the court based its analysis on the

---

[3]    The Fourth Circuit declined to address respondents' argument that the other statutory and regulatory exemptions likewise establish that the automated-call provision is content-based and unconstitutional, even though respondents had properly raised those exemptions throughout the case. Pet. App. 10a n.7; *see also* C.A.J.A. 290-92 (Resps. Mot. Summ. J.); C.A.J.A. 381-82, 388 (Resps. Reply in Supp. Summ. J.).

10

erroneous premise that it was the government-debt *exception*, and not the underlying speech *prohibition*, that violates the First Amendment—even though (1) the exception itself does not abridge any speech, and (2) respondents had clearly challenged the restriction, not the exception. Pet. App. 3a; *see supra* at 8; Resps. C.A. Br. 8; Resps. C.A. Reply Br. 2-4. The court then found that the government-debt exception is severable from the rest of the TCPA, including the speech-abridging prohibition that respondents have actually challenged. Pet. App. 21a-24a. The Fourth Circuit thus purported to remedy the First Amendment violation by *expanding* the TCPA's speech restriction to abridge speech that Congress purposely freed from regulation. *Id.* at 23a-24a.

The Government and respondents each sought rehearing en banc, challenging the constitutional and remedial holdings, respectively. Both petitions were denied on June 21, 2019. *Id.* at 49a.

4. While this case was pending in the Fourth Circuit, the Ninth Circuit addressed the scope of the TCPA's automated-call ban in *Marks v. Crunch San Diego*, 904 F.3d 1041 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1289 (2019). *Marks* adopted an expansive interpretation of the TCPA's definition of ATDS, holding that it encompasses any device "with the capacity to dial stored numbers automatically." *Id.* at 1052. That definition is broad enough to include virtually all of the 265 million smartphones now in use in the United States.

A few months later—and shortly after the Fourth Circuit's decision in this case—the Ninth Circuit rejected various First Amendment challenges to the TCPA's constitutionality in *Duguid v. Facebook, Inc.,* 926 F.3d 1146 (9th Cir. 2019). The court began by

11

doubling-down on *Marks*'s expansive interpretation of the ATDS provision and rejecting Facebook's argument that this interpretation rendered the statute unconstitutionally overbroad. *Id.* at 1151-52. The Ninth Circuit then accepted Facebook's alternative constitutional argument—which tracks the one respondents advanced here—that the statute is content-based and fails strict scrutiny. *Id.* at 1153-56. Just like the Fourth Circuit in this case, however, the court severed the speech-permitting exception from the remainder of the statute. *Id.* at 1156-57. The Ninth Circuit therefore left intact the speech-abridging prohibition that Facebook actually challenged, and that failed strict scrutiny. *Id.*

Two weeks after its decision in *Duguid*, the Ninth Circuit issued an opinion in *Gallion v. United States*, 772 F. App'x 604 (9th Cir. 2019), again recognizing that the content-based distinctions embodied in the TCPA were unconstitutional, and again choosing to sever the government-debt exception rather than invalidate the statute's prohibition on speech. *Id.* (applying *Duguid*).

On October 17, 2019, Facebook filed a petition for certiorari in this Court asserting that (1) the *Marks*/*Duguid* interpretation of the ATDS provision is erroneous, and (2) the automated-call ban is an unconstitutional content-based restriction on speech. Pet. 12-34, *Facebook, Inc. v. Duguid*, No. 19-511. On November 1, 2019, Charter Communications filed its own petition for certiorari advancing the constitutional argument. *Charter Commc'ns, Inc. v. Gallion*, No. 19-575. And on November 14, 2019, the Solicitor General filed the petition in this case.

12

## ARGUMENT

The Government is right that this Court should review the Fourth Circuit's decision in this case, including both its constitutional and remedial holdings. The Fourth Circuit's ruling that the TCPA's automated-call restriction violates the First Amendment is correct, but certiorari is nonetheless appropriate under this Court's usual practice of reviewing any decision holding a federal statute unconstitutional. The Fourth Circuit's severability ruling is both wrong and independently certworthy. That ruling violates this Court's precedent, conflicts with decisions of other courts of appeals, and undermines core First Amendment principles. Additionally, because the *Facebook* case raises a related and independently certworthy statutory question, this Court should grant review there as well.

### A. The Constitutional Issue Warrants Review

The Government's petition asks this Court to review the Fourth Circuit's holding that the TCPA's automated-call restriction is facially unconstitutional, thereby requiring severance of the government-debt exception. Pet. 6-17. Respondents agree that certiorari is warranted.

1. This Court's "usual" practice is to grant certiorari "when a lower court has invalidated a federal statute." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2298 (2019). No reason exists to depart from that practice here. The constitutional question in this case is exceptionally important to the Government, to respondents, and indeed to all potential TCPA defendants around the country. As the petition notes

13

(at 13), the government-debt exception is frequently utilized and enables private debt collectors to help the Government collect millions of dollars annually. More generally, the TCPA is one of the most frequently litigated statutes in the federal courts, with thousands of cases—alleging billions of dollars in damages—filed each year. *See supra* at 5-6. Potential TCPA defendants have the right to know whether the prohibitions on their speech are constitutionally invalid. There is plainly an important need for a uniform federal rule on this question. This Court should resolve the First Amendment issue in this case.

2. Although the Government is right about certiorari, the Fourth Circuit's holding that the TCPA's automated-call provision violates the First Amendment is correct. If certiorari is granted, this Court should affirm that holding on the merits.

The automated-call prohibition is a content-based restriction on speech because (1) it "draws distinctions based on the message a speaker conveys," and (2) whether its prohibitions apply to any given automated call "depend[s] entirely on the communicative content of the [call]." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015); *see also McCullen v. Coakley*, 573 U.S. 464, 479 (2014); Pet. App. 12a-14a. As the Fourth Circuit explained, the application of the TCPA's speech restriction depends on whether the call in question is made to collect government-backed debt. Pet. App. 12a-13a. If so, the call is permitted. If not, the call is prohibited. Either way, whether the statute applies turns on the *content* of the call. By design, the TCPA favors speech

14

relating to collection of government-backed debt while banning otherwise identical speech.[4]

Content-based speech restrictions like the one at issue here trigger strict scrutiny and are "presumptively unconstitutional"; they are justified "only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2226. Here, the Fourth Circuit rightly concluded that the automated-call ban does not serve compelling interests. The statutory exception for calls made to collect government-backed debts creates a gaping hole in the regulatory framework that completely undermines the Government's asserted interest in protecting personal privacy. *See* Pet. App. 17a (noting that exception "runs counter to the privacy interests" that TCPA ostensibly serves). More than 41 million borrowers owe over one trillion dollars in federal student loans alone (not to speak of the many other types of government-backed loans available), and the government-debt exception authorizes intrusive debt-collection calls to each of those individuals. *Id.* at 17a-18a. Indeed, the Government itself affirmatively endorses such calls,

---

4    Other features of the TCPA likewise confirm that the automated-call provision is content-based and triggers strict scrutiny. For example, the broad exemption for *any* call or text message sent by any federal, state, or local government entity (and their agents) impermissibly favors government speech— advancing government interests—over other speech by ordinary citizens. *See, e.g.*, *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994) ("[S]peaker-based laws demand strict scrutiny when they reflect the Government's preference for the substance of what the favored speakers have to say (or aversion to what the disfavored speakers have to say.").

15

asserting that the exception could "save the federal government $120 million over ten years." Pet. 13.

The TCPA's other exemptions likewise undermine any claim that the automated-call ban advances a compelling interest. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 520 (1981). For instance, as the Government emphasizes, "the federal government and its agencies" are not subject to the TCPA's speech ban. Pet. 12. Government officials and contractors are thus allowed to make a broad range of automatic calls, from conducting research surveys to scheduling congressional town halls. The wholesale exemption for all government speakers and messages "undermine[s]" the statute's "ameliorative effect" and shows that the privacy "justification" is "thin*." Italian Colors Restaurant v. Becerra*, 878 F.3d 1165, 1177-78 (9th Cir. 2018); *see also Thomas v. Chicago Park Dist.*, 534 U.S. 316, 325 (2002) ("Granting waivers to favored speakers (or, more precisely, denying them to disfavored speakers) would of course be unconstitutional . . . ."). The same goes for the statute's other exemptions—as well as its open-ended delegation to the FCC to create still more. *See supra* at 4-5.

This Court has explained that when a speech restriction "leaves appreciable damage to [a] supposedly vital interest unprohibited," it "cannot be regarded as protecting an interest of the highest order." *Reed*, 135 S. Ct. at 2232 (quoting *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002)). That is the case here. The Fourth Circuit thus correctly held that the automated-call provision is unconstitutional.

3. The Government raises a series of arguments challenging the Fourth Circuit's constitutional

16

holding.  *See* Pet. 6-14.  Respondents will address
those arguments in full on the merits, if and when
certiorari is granted.  But three quick points bear
noting at this stage.

First, the government's core argument—that the
automated-call restriction is "content-neutral"
because it is triggered by the call's "economic purpose"
(Pet. 6-11)—is inconsistent with this Court's decision
in *Reed*.  There, the Court made clear that one way a
statute can be "content-based" is when it "defin[es]
regulated speech by its . . . purpose."  135 S. Ct. at
2227.  That is what the TCPA does here, where the
only way to determine whether the automated-call
prohibition applies is to consider the content of the
call—asking whether the call was "made for
emergency purposes," "to collect a debt owed to or
guaranteed by the United States," or for any of the
other permissible content-based reasons.  47 U.S.C.
§ 227(b)(1)(A).

Second, the government's attempt to avoid
classifying the automated-call restriction as content-
based has been soundly rejected by the Fourth and
Ninth Circuits—the only federal courts of appeals to
have addressed that issue.  *See* Pet. App. 11a-22a;
*Duguid*, 926 F.3d at 1153-56.

And third, the Government does not even *try* to
challenge the Fourth Circuit's conclusion that the
automated-call ban fails strict scrutiny.  In this Court,
the Government's only assertion is that strict scrutiny
does not apply in the first place, because the TCPA's
speech restriction is not content-based.  *See* Pet. 6-14.
The Government's unwillingness to defend the strict-
scrutiny arguments it raised below is telling, and
further confirms that the Fourth Circuit's

17

constitutional analysis should be affirmed on the merits.

## B.   The Remedial Issue Warrants Review

The Government's petition also asks this Court to review the Fourth Circuit's remedial holding, which left the TCPA's speech restriction in place—even though it flunked strict scrutiny—and instead severed the government-debt exception.  Pet. 14-15. Respondents agree that this Court should review the remedial question.  This Court's standard practice is to address the remedial consequences whenever it concludes that a federal statute is unconstitutional. *See, e.g.*, *Reed*, 135 S. Ct. at 2231-33; *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508-10 (2010); *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 233-34 (1987).  And here, the remedial issue is independently certworthy, as the Fourth Circuit's analysis contradicts decades of this Court's precedent, creates a circuit split with multiple courts of appeals, and undermines core First Amendment and separation-of-powers principles.

1. It is black-letter law that when a statutory provision violates the Constitution, it must be invalidated.  *See, e.g.*, *Free Enter.*, 561 U.S. at 508. The severability doctrine addresses whether other portions of a statute—which are perfectly constitutional on their own—must nonetheless also be invalidated because of their relationship to the unconstitutional provision.   As this Court has explained: "'Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem,' severing any 'problematic portions while leaving the remainder intact.'"   *Id.* (citation omitted).

18

Here, respondents challenged the TCPA's *restriction* on automated calls, 47 U.S.C. § 227(b)(1)(A)(iii). *See supra* at 8, 10; *see also* C.A.J.A. 141 ¶ 2 (specifically identifying Section 227(b)(1)(A)(iii) as the "cell phone call ban" being challenged in this action). That restriction is the "problematic portion[]" of the statute that violates the First Amendment's prohibition on "abridging" speech. *Free Enter.*, 561 U.S. at 508 (citation omitted); U.S. Const. amend. I. The restriction must therefore be set aside.

The Fourth Circuit concluded otherwise by mischaracterizing this case as a challenge to the government-debt *exception*, instead of to the automated-call *restriction*. Pet. App. 2a, 3a, 6a, 9a, 10a. But that makes no sense. The First Amendment prohibits restrictions on speech—not exemptions from those restrictions that permit speech. The government-debt exception does not limit speech in any way. Moreover, that exception has no direct bearing on respondents whatsoever: Respondents are not government-debt collectors; they care only about alleviating the TCPA's abridgement of their own speech; and they did not challenge the exception. As respondents have repeatedly explained, the exception's role in this case is to help to establish that the restriction *itself* is content-based and unconstitutional. *See supra* at 8; Resps. C.A. Br. 12-17.

Because the Fourth Circuit mischaracterized the basis of respondents' constitutional challenge, it went on to misapply this Court's severability doctrine. Believing that the *exception* was unconstitutional, it severed that exception but left the underlying restriction intact. Pet. App. 22a-24a.

19

That was error.  The government-debt exception does not restrict speech; it *protects* speech—and therefore does not violate the First Amendment.  The Fourth Circuit's ruling rewrites the statute in a way that makes *more* speech unlawful than Congress ever intended.  That perverse result violates separation-of-powers principles and turns the First Amendment upside down.[5]

Instead of expanding the TCPA's prohibition of speech, the Fourth Circuit should have invalidated and severed Section 227(b)(1)(A)(iii), leaving the TCPA's other provisions—regulating other types of communications—intact.  That approach would have implemented this Court's settled severability doctrine while also heeding the Communications Act's "Separability" provision, which directs that if any part of the TCPA "is held invalid, the remainder of the [statute] . . . shall not be affected thereby."  47 U.S.C. § 608.

2. The Fourth Circuit's severability analysis squarely conflicts with this Court's consistent rulings in analogous First Amendment cases.  When concluding that the exceptions to a speech restriction show that the restriction is unconstitutional, this

---

[5]   The Fourth Circuit's analysis also creates a significant due process problem, insofar as it threatens retroactive liability for any government-backed-debt collector who made unconsented communications before the Fourth Circuit invalidated and severed the automated-call provision.  Penalizing such debt collectors for engaging in speech expressly protected by statute violates principles of fair notice.  But exempting them (and *only* them) from liability resurrects the content-based distinction that the court's misguided severability analysis sought to eliminate.

20

Court has consistently—and correctly—invalidated the restriction.

The most recent example is *Reed*, where this Court addressed a township "Sign Code" with a basic structure similar to the TCPA. The statute contained a blanket "prohibit[ion]" on "the display of outdoor signs anywhere within the Town," but narrowed the prohibition with a series of "exemptions" based on "whether a sign convey[ed]" a "particular message." *Reed*, 135 S. Ct. at 2224, 2227, 2231. As this Court explained, the "Sign Code [was] content based" because the existence of the various exemptions meant the prohibition on the display of outdoor "sign[s] . . . depend[ed] entirely on the communicative content of the sign." *Id.* at 2227. The Court subjected the statute to strict scrutiny and held that the exceptions showed that the speech restriction was "hopelessly underinclusive" and thus unsupported by any compelling interest. *Id.* at 2231. Most importantly, after concluding that the statute was unconstitutional, the *Reed* Court—unlike the Fourth Circuit here—held the Sign Code's *restrictions* on speech to be unconstitutional. The Court nowhere suggested that the First Amendment problem could be cured by simply severing the code's exemptions and increasing the scope of the town's restriction on speech. *Cf.* Pet. App. 22a-24a.

Another example is *Arkansas Writers' Project*, where this Court considered a sales tax on magazines, which contained an exemption for "religious, professional, trade, or sports periodical[s]." 481 U.S. at 226 (citation omitted). The Court concluded that the state had "advanced no compelling justification" for this content-based taxation scheme. *Id.* at 234. But rather than strike down the exemption for certain

21

types of magazines, the Court held that the "selective" taxation rendered "the *tax* . . . invalid under the First Amendment." *Id.* (emphasis added).

*Reed* and *Arkansas Writers' Project* align with decades of this Court's First Amendment precedent, which invariably recognize that the correct remedy for a broad content-based restriction on speech that fails strict scrutiny is to strike down the offending restriction, not its exceptions. *See, e.g.*, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-66 (2011); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 190 (1999); *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 430-31 (1993); *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 592-93 (1983); *Carey v. Brown*, 447 U.S. 455, 471 (1980); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 795 (1978); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 102 (1972). The Fourth Circuit's ruling departs from that settled law without justification.

3. The Fourth Circuit's severability analysis also sharply conflicts with decisions of other courts of appeals, which faithfully apply this Court's precedent to strike down restrictions—not exceptions—that unconstitutionally abridge speech based on content. *See, e.g.*, *Willson v. City of Bel-Nor*, 924 F.3d 995, 1000, 1004 (8th Cir. 2019); *Rappa v. New Castle Cty.*, 18 F.3d 1043, 1072-74 (3d Cir. 1994) (Becker, J., joined by Alito, J.); *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1572 (11th Cir. 1993); *Matthews v. Town of Needham*, 764 F.2d 58, 61 (1st Cir. 1985) (Rosenn, Breyer, and Torruella, JJ.); *Beckerman v. City of Tupelo*, 664 F.2d 502, 513 (5th Cir. Unit A. Dec. 1981). In such cases, courts have recognized that the exceptions "betray[] the frailty of any potential state interests" and thus render the underlying restriction

22

unconstitutional. *Dana's R.R. Supply v. Att'y Gen.*, 807 F.3d 1235, 1250 (11th Cir. 2015).

The clearest conflict is with the Third Circuit's decision in *Rappa*. There, the Third Circuit addressed a Delaware ordinance prohibiting most signs near state highways but exempting "signs advertising local industries, meetings, buildings, historical markers and attractions." 18 F.3d at 1047. After holding that the statute was an unconstitutional content-based speech restriction, the court considered whether the exceptions could be severed in light of an express severability clause— which stated that "[i]f any provision of the Code . . . is held invalid, such invalidity shall not affect the provisions or application of this Code . . . that can be given effect without the invalid provisions or application." *Id.* at 1072 (citation omitted).

Although the Third Circuit recognized that "the rest of the statute could surely function independently" if the exceptions were severed, it nonetheless concluded that severance would be inappropriate. *Id.* at 1072-73. The court explained that the "severability inquiry here has a constitutional dimension," because eliminating the exception "would . . . restrict *more* speech than [the law] currently does." *Id.* The court concluded "that the proper remedy for content discrimination generally *cannot* be to sever the statute so that it restricts more speech than it did before—at least absent quite specific evidence of a legislative preference for elimination of the exception." *Id.* at 1073 (emphasis added).

The Fourth Circuit's ruling is also in sharp tension with the Eleventh Circuit's decision in *Dimmitt*. There, the court considered a municipal sign code that

23

exempted flags, so long as those flags "represent[ed] a governmental unit or body." *Dimmitt*, 985 F.2d at 1568 (citation omitted). The court first held that this content-based distinction failed strict scrutiny. *Id.* at 1572. It went on to conclude that the district court had erred in invalidating only "the *exemption* for a limited number of flags"—a remedy that would "leave[] [the challenger] in a worse position than if the City had prevailed." *Id.* (emphasis added). The Eleventh Circuit explained that the district court's error stemmed from treating the exemption "as if this section itself prohibited" speech. *Id.* Instead, the court reasoned, the broad prohibition "must also be declared unconstitutional." *Id.* That is the exact opposite of what the Fourth Circuit did here.

To be sure, the Fourth Circuit's severability analysis has now been adopted by the Ninth Circuit in *Duguid v. Facebook, Inc.,* 926 F.3d 1146 (9th Cir. 2019), and *Gallion v. United States*, 772 F. App'x 604 (9th Cir. 2019). Like the Fourth Circuit, the Ninth Circuit held the TCPA to be impermissibly content-based and thus unconstitutional. *Duguid*, 926 F.3d at 1152-56; *Gallion*, 772 F. App'x at 605-06. And also like this case, the Ninth Circuit's remedy was to expand the TCPA's speech ban by severing the government-debt-collection exception, because, in the court's view, "[e]xcising the debt-collection exception preserves the fundamental purpose of the TCPA and leaves" a "content-neutral TCPA." *Duguid*, 926 F.3d at 1157; *see also Gallion*, 772 F. App'x at 606.

But as Facebook and Charter point out in their respective petitions for certiorari, the Ninth Circuit's severability rulings reflect the same core error at the heart of the Fourth Circuit's ruling here. Both courts mistakenly treated the challenge as being to the

24

government-debt exception, instead of to Section
227(b)(1)(A)(iii)'s underlying restriction. And both
courts purported to fix a First Amendment violation
by abridging more speech. *See Facebook* Pet. 16-21;
*Facebook* Pet. Reply 3, 5-6; *Gallion* Pet. 9-21.

4. Finally, the Fourth Circuit's severability ruling
creates significant practical problems. Severing a
speech-promoting exception (and leaving the
restriction intact) means "individuals would lose
much of their incentives to challenge
[unconstitutional] statutes." *Rappa*, 18 F.3d at 1073.
After all, parties burdened by a speech restriction
would have no reason to challenge it if the sole
"remedy" were to impose the same burden on others.
That result contradicts the bedrock principle that
courts must employ remedies that "create
'[]incentive[s] to raise [constitutional] challenges.'"
*Lucia v. SEC*, 138 S. Ct. 2044, 2055 n.5 (2018) (first
two alterations in original) (citation omitted). The
overall impact of the Fourth Circuit's misguided
approach is to insulate unconstitutional statutes from
judicial review.

The Government admits—and actually
embraces—this result. In this case, *Duguid*, and
*Gallion*, the Government repeatedly urged the lower
courts *not* to address the constitutional question
precisely because respondents could not obtain relief
under its (erroneous) severability analysis. *See*
C.A.J.A. 58-60; United States Petition for Panel
Rehearing and Rehearing En Banc 7, *Duguid v.
Facebook, Inc.*, No. 17-15320 (9th Cir. filed July 29,
2019), ECF No. 82-1; United States Petition for Panel
Rehearing and Rehearing En Banc 6-9, *Gallion v.
Charter Commc'ns, Inc.*, No. 18-55667 (9th Cir. filed
Aug. 22, 2019), ECF No. 61; *see also* Pet. 15. As the

25

Government well knows, the inevitable result of applying severability principles in this way is to allow unconstitutional statutes to stay on the books—and to continue chilling valued speech at the heart of the First Amendment. This Court should not countenance that result.

\*    \*    \*

For the reasons noted above, respondents fully support granting the Government's petition, encompassing both the constitutionality and remedial issues. Nonetheless, the Court may wish to reframe the question presented to more accurately capture the core constitutional question at the heart of this case. As explained above, the issue is not "[w]hether the government-debt *exception* to the TCPA's automated-call restriction violates the First Amendment," (Pet. I (emphasis added)) but rather whether the *restriction* is unconstitutional. *See supra* at 8, 10, 18-19. If the Court wishes to reformulate the question, it could ask the parties to address "Whether the TCPA's automated-call prohibition is an unconstitutional content-based restriction of speech, and if so whether the Fourth Circuit erred in addressing the constitutional violation by broadening the prohibitions to abridge more speech." *See supra* at i.

In addition to granting certiorari in this case, the Court should also grant review in *Facebook*, because that case raises a related statutory question about the breadth of the TCPA's automated-caller provision—specifically, the proper interpretation of the statutory definition of ATDS. *Supra* at 10-11. Respondents agree with Facebook that the Ninth Circuit's statutory holding exacerbates the constitutional flaws of the statute and is clearly wrong and at odds with decisions by the Third and D.C. Circuits. *Facebook*

26

Pet. 23-34; *Facebook* Pet. Reply 6-9. Indeed, the statutory issue is frequently litigated and has generated a remarkable 38-28 split among district courts across the country. Alexis Kramer, *Facebook Robocall Case Gives Justices Shot to Define Autodialer*, Bloomberg L. News (Oct. 28, 2019). Respondents also agree with Facebook that in determining whether the automated-call prohibition satisfies strict scrutiny, it would be helpful to know precisely what that prohibition covers. *See Facebook* Pet. Reply 6-8.

Given the TCPA's overarching importance—and its broad chilling effect on speech—this Court should take this opportunity to review all major outstanding constitutional and statutory questions about the meaning and validity of the TCPA's automated-call ban. It should grant Facebook's petition alongside the Government's petition here, and hear oral argument in both cases.

27

## CONCLUSION

The petition for a writ of certiorari should be granted.

Respectfully submitted,

WILLIAM E. RANEY                    ROMAN MARTINEZ
KELLIE MITCHELL BUBECK               *Counsel of Record*
 COPILEVITZ, LAM &                  ANDREW B. CLUBOK
  RANEY, P.C.                       SUSAN E. ENGEL
310 W. 20th Street                  TYCE R. WALTERS
Suite 300                           SAMIR DEGER-SEN
Kansas City, MO 64108               GREGORY B. IN DEN BERKEN
(816) 472-9000                      LATHAM & WATKINS LLP
                                    555 Eleventh Street, NW
                                    Suite 1000
                                    Washington, DC 20004
                                    (202) 637-2200
                                    roman.martinez@lw.com

*Counsel for Respondents*

December 4, 2019

# EXHIBIT E

Case 2:20-cv-01068-FLA-PVC   Document 12-2   Filed 02/28/20   Page 81 of 110   Page ID #:141

DECISION BELOW: 923 F.3d 159

LOWER COURT CASE NUMBER: 18-1588

QUESTION PRESENTED:

The Telephone Consumer Protection Act of 1991 (TCPA), Pub. L. No. 102-243, 105 Stat. 2394, generally prohibits the use of any "automatic telephone dialing system or an artificial or prerecorded voice" to "make any call" to "any telephone number assigned to a * * * cellular telephone service." 47 U.S.C. 227(b)(1)(A)(iii) (Supp. V 2017). The TCPA excepts from that automated-call restriction any "call made for emergency purposes or made with the prior express consent of the called party." *Ibid*. In 2015, Congress amended the TCPA to create an additional exception for calls "made solely to collect a debt owed to or guaranteed by the United States." *Ibid.*

Respondents wish to use an automatic telephone dialing system or an artificial or prerecorded voice to make calls to the cell phones of potential or registered voters to solicit political donations and to advise on political and governmental issues. First Am. Compl. ¶¶ 8-10, 12. The court of appeals held that the government-debt exception to the TCPA's automated-call restriction violates the First Amendment. The court further held that the proper remedy was to sever the government-debt exception, leaving the basic automated-call restriction in place. The question presented is as follows:

Whether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute.

CERT. GRANTED 1/10/2020

# EXHIBIT F

1   Elizabeth L. Deeley (Bar No. 230798)
    *elizabeth.deeley@lw.com*
2   Melanie M. Blunschi (Bar No. 234264)
    *melanie.blunschi@lw.com*
3   LATHAM & WATKINS LLP
    505 Montgomery Street, Suite 2000
4   San Francisco, CA 94111
    415.391.0600 / 415.395.8095 (Fax)
5
    Andrew B. Clubok (*pro hac vice*)
6     *andrew.clubok@lw.com*
    Susan E. Engel (*pro hac vice*)
7     *susan.engel@lw.com*
    LATHAM & WATKINS LLP
8   555 Eleventh Street, NW, Suite 1000
    Washington, D.C. 20004
9   202.637.2200 / 202.637.2201 (Fax)

10  *Counsel for Defendant Facebook, Inc.*

11  *Additional Counsel on Signature Page*

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14                 SAN FRANCISCO DIVISION

15  COLIN R. BRICKMAN, individually and on    CASE NO. 3:16-cv-00751-WHO
    behalf of a class of similarly situated
16  individuals,                              **STIPULATION AND ORDER TO**
                                              **ADJOURN CASE MANAGEMENT**
17                Plaintiff,                  **CONFERENCE, VACATE CASE**
                                              **MANAGEMENT STATEMENT DEADLINE,**
18        v.                                  **AND STAY CASE PENDING DECISION IN**
                                              ***FACEBOOK, INC. V. DUGUID*, NO. 19-511**
19  FACEBOOK, INC.,                           **(S. CT.)**

20                Defendant.                  Judge:    Hon. William H. Orrick

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

STIP. AND ORDER
TO STAY CASE
CASE NO. 16-CV-00751-WHO

Defendant Facebook, Inc., and Plaintiff Colin Brickman (herein "Parties") jointly and respectfully agree and request that the Court adjourn the currently scheduled case management conference, vacate the case management statement deadline, and stay this matter for the limited time until the pending Petition for Writ of Certiorari is resolved in *Facebook, Inc. v. Duguid*, No. 19-511 (S. Ct.).[1] The Parties will notify this Court within 14 days of the Supreme Court's order granting, denying, holding in abeyance, or otherwise disposing of Facebook's currently pending Petition for Writ of Certiorari in *Facebook v. Duguid* and outline their respective positions for the orderly litigation of this case.

On January 10, 2020, the Supreme Court granted review of the certiorari petition in *Barr v. American Association of Political Consultants, Inc.* (*AAPC*), No. 19-631 (S. Ct.), https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/19-631.html. In *AAPC*, the Supreme Court will decide "[w]hether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute." No. 19-631 (S. Ct.), Question Presented, https://www.supremecourt.gov/qp/19-00631qp.pdf. The Supreme Court is expected to issue its decision in *AAPC* no later than June of 2020.

In addition to *AAPC*, pending before the Supreme Court is a certiorari petition in the *Facebook v. Duguid* case that presents the same constitutionality question, as well as a question about the statutory meaning of the TCPA's automated call-restriction. *Facebook v. Duguid*, No. 19-511 (S. Ct.). The Supreme Court considered the *Facebook v. Duguid* petition at its conference on January 24, 2020, but has not yet announced its decision as to the petition.

Given that the Supreme Court's resolution of *Facebook. v. Duguid* may impact this case, the parties agree that adjourning the case management conference, vacating the case management statement deadline, and staying the matter pending the resolution of the certiorari petition in

---

[1] The docket for *Facebook, Inc. v. Duguid*, No. 19-511 (S. Ct.), is publicly available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/19-511.html.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

STIP. AND ORDER
TO STAY CASE
CASE NO. 16-CV-00751-WHO

*Facebook v. Duguid* will conserve judicial resources and avoid needless expenses.  The parties thus **STIPULATE** that:

1. The proposed limited stay until the Supreme Court issues an order granting, denying, holding in abeyance, or otherwise disposing of the pending certiorari petition in *Facebook, Inc. v. Duguid,* is appropriate, will not prejudice either party, will conserve judicial resources, and will best serve the orderly course of justice;

2. The following dates should be vacated:   (i) the case management conference scheduled for February 4, 2020, and (ii) the case management statement deadline of January 28, 2020;[2] and,

3. The parties will notify this Court of the Supreme Court's order granting, denying, holding in abeyance, or otherwise disposing of the pending certiorari petition in *Facebook v. Duguid* within 14 days, and will include in that notice a proposal for next steps in this case.

**IT IS SO STIPULATED.**

Dated:  January 28, 2020                    Respectfully submitted,

*/s/ Melanie M. Blunschi*

Andrew B. Clubok (*pro hac vice*)          Melanie M. Blunschi ((Bar No. 234264)
Susan E. Engel (*pro hac vice*)            Elizabeth L. Deeley (Bar No. 230798)
LATHAM & WATKINS LLP                       LATHAM & WATKINS LLP
555 Eleventh Street, NW                    505 Montgomery Street
Suite 1000                                 Suite 2000
Washington, D.C. 20004-1304                San Francisco, CA 94111-6538
Telephone: (202) 637-2200                  Telephone: (415) 395-8233
Fax: (202) 637-2201                        Fax: (415) 395-8095
Email: andrew.clubok@lw.com                Email: elizabeth.deeley@lw.com
   susan.engel@lw.com                         melanie.blunschi@lw.com

*Counsel for Defendant Facebook, Inc.*

---

[2] The Court's approval of this Stipulation would also moot Facebook's pending motion to adjourn case management conference and vacate case management statement deadline (ECF No. 124).

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

STIP. AND ORDER
TO STAY CASE
CASE NO. 16-CV-00751-WHO

1

2    Hassan Ali Zavareei                   /s/ Patrick J. Perotti
                                          _____
3    Andrea R. Gold                        Frank A. Bartela
     TYCKO & ZAVAREEI LLP                  Patrick J. Perotti
4    1828 L Street, N.W., Suite 1000       DWORKEN & BERNSTEIN CO., L.P.A
     Washington, DC 20036                  60 South Park Place
5    (202) 973-0900                        Painesville, OH 44077
     Fax: (202) 973-0950                   440-352-3391
6    Email: agold@tzlegal.com              Fax: 440-352-3469
            hzavareei@tzlegal.com          Email: pperotti@dworkenlaw.com
7                                                 fbartela@dworkenlaw.com

     *Counsel for Plaintiff Colin R. Brickman*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

STIP. AND ORDER
TO STAY CASE
CASE NO. 16-CV-00751-WHO

## **ATTESTATION**

In compliance with Local Rule 5-1(i)(3), I attest that I am the ECF user whose identification and password is being used to file this Stipulation and [Proposed] Order to Adjourn Case Management Conference, Vacate Case Management Statement Deadline, and Stay Case Pending Decision in *Facebook, Inc. v. Duguid*, No. 19-511 (S. Ct.), and that all signatories on whose behalf this filing is submitted concur in its content and have authorized its filing.

Dated:  January 28, 2020                    */s/ Melanie M. Blunschi*
                                             Melanie M. Blunschi

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

STIP. AND ORDER
TO STAY CASE
CASE NO. 16-CV-00751-WHO

1

**ORDER**

2    Upon consideration of the parties' Stipulation to Adjourn Case Management Conference,

3 Vacate Case Management Statement Deadline, and Stay Case Pending Decision in *Facebook, Inc.*

4 *v. Duguid*, No. 19-511 (S. Ct.), the Court finds that good cause for the requested stay has been

5 shown and **GRANTS** the parties' Stipulation.

6    This case is hereby **STAYED** pending the Supreme Court's forthcoming Order on the

7 pending certiorari petition in *Facebook v. Duguid*.  All case deadlines are thus vacated.  The parties

8 shall notify the Court within 14 days of the Supreme Court's order granting, denying, holding in

9 abeyance, or otherwise disposing of the pending certiorari petition in *Facebook v. Duguid*, and

10 will include in that notice a proposal for next steps in the case.

11

12 **PURSUANT TO STIPULATION, IT IS SO ORDERED.**

13

14 Dated:  January ___, 2020

15                                           Hon. William H. Orrick
                                            United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

STIP. AND ORDER
TO STAY CASE
CASE NO. 16-CV-00751-WHO

# EXHIBIT G

<table>
<tr><td></td><td>Search documents in this case: [_____] Search</td></tr>
</table>

## No. 19-511

| Title: | **Facebook, Inc., Petitioner** <br> **v.** <br> **Noah Duguid, et al.** |
|---|---|
| Docketed: | October 21, 2019 |
| Lower Ct: | United States Court of Appeals for the Ninth Circuit |
| Case Numbers: | (17-15320) |
| Decision Date: | June 13, 2019 |
| Rehearing Denied: | August 22, 2019 |

| DATE | PROCEEDINGS AND ORDERS |
|---|---|
| Oct 17 2019 | Petition for a writ of certiorari filed. (Response due November 20, 2019) <br><br> **Petition     Appendix     Certificate of Word Count     Proof of Service** |
| Nov 07 2019 | Blanket Consent filed by Petitioner, Facebook, Inc. <br><br> **Blanket Consent** |
| Nov 18 2019 | Waiver of right of respondent Noah Duguid to respond filed. <br><br> **Main Document** |
| Nov 20 2019 | Brief amicus curiae of Credit Union National Association, Inc. filed. <br><br> **Main Document     Certificate of Word Count     Proof of Service** |
| Nov 20 2019 | Brief of respondent United States filed. <br><br> **Main Document     Certificate of Word Count** |
| Nov 20 2019 | Brief amici curiae of Midland Credit Management, Inc. and Encore Capital Group, Inc. filed. |

|  | **Main Document** **Certificate of Word Count** **Proof of Service** |
|---|---|
| Nov 20 2019 | Brief amici curiae of Chamber of Commerce of the United States of America and Business Roundtable filed.<br><br>**Main Document** **Certificate of Word Count** **Proof of Service** |
| Nov 20 2019 | Brief amicus curiae of ACA International, Inc. filed.<br><br>**Main Document** **Proof of Service** **Certificate of Word Count** |
| Nov 20 2019 | Brief amicus curiae of Retail Litigation Center, Inc. filed.<br><br>**Main Document** **Certificate of Word Count** **Proof of Service** |
| Nov 25 2019 | Waiver of the 14-day waiting period under Rule 15.5 filed.<br><br>**Main Document** |
| Nov 26 2019 | DISTRIBUTED for Conference of 12/13/2019. |
| Dec 02 2019 | Reply of petitioner Facebook, Inc. filed. (Distributed)<br><br>**Main Document** **Certificate of Word Count** **Proof of Service** |
| Dec 04 2019 | Response Requested. (Due January 3, 2020) |
| Jan 03 2020 | Brief of respondent Noah Duguid in opposition filed.<br><br>**Main Document** **Certificate of Word Count** **Proof of Service** |
| Jan 06 2020 | Letter waiving the 14-day waiting period for the distribution of the petition pursuant to Rule 15.5 filed.<br><br>**Main Document** |
| Jan 08 2020 | DISTRIBUTED for Conference of 1/24/2020. |
| Jan 10 2020 | Reply of petitioner Facebook, Inc. filed. (Distributed)<br><br>**Main Document** **Certificate of Word Count** **Proof of Service** |

| NAME | ADDRESS | PHONE |
|---|---|---|
| **Attorneys for Petitioner** | | |
| Paul D. Clement<br>   Counsel of Record | Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, NW<br>Washington, DC 20004<br><br>paul.clement@kirkland.com | 2023895000 |
| Party name: Facebook, Inc. | | |
| **Attorneys for Respondents** | | |
| Noel J. Francisco<br>   Counsel of Record | Solicitor General<br>United States Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001<br><br>SupremeCtBriefs@USDOJ.gov | 202-514-2217 |
| Party name: United States | | |
| Sergei Lemberg | Lemberg Law, LLC<br>43 Danbury Road<br>Wilton, CT 06897<br><br>slemberg@lemberglaw.com | 203-653-2250 |
| Party name: Noah Duguid | | |
| **Other** | | |
| Shay Dvoretzky<br>   Counsel of Record | Jones Day<br>51 Louisiana Avenue NW<br>Washington, DC 20001-2113<br><br>sdvoretzky@jonesday.com | 2028793474 |
| Party name: Chamber of Commerce of the United States of America and Business Roundtable | | |
| Julian Richard Ellis Jr.<br>   Counsel of Record | Brownstein Hyatt Farber Schreck,<br>LLP<br>410 17th Street, Suite 2200<br>Denver, CO 80202<br><br>jellis@bhfs.com | 303-223-1142 |
| Party name: Credit Union National Association, Inc. | | |

Joseph Russell Palmore        Morrison & Foerster LLP        202-887-6940
  Counsel of Record           2000 Pennsylvania Ave., NW
                              Washington, DC 20006

                              jpalmore@mofo.com

Party name: Retail Litigation Center, Inc.

Zachary Charles Schauf        Jenner & Block, LLP            202-637-6379
  Counsel of Record           1099 New York Ave., NW
                              Washington, DC 20001

                              ZSchauf@jenner.com

Party name: Midland Credit Management, Inc. and Encore Capital Group, Inc.

Steven Gregory White          Gray Reed & McGraw LLP         214-954-4135
  Counsel of Record           1601 Elm Street
                              Suite 4600
                              Dallas, TX 75201

                              gwhite@grayreed.com

Party name: ACA International, Inc.

# EXHIBIT H

No. _____

## In the
## Supreme Court of the United States

CHARTER COMMUNICATIONS, INC. AND SPECTRUM
MANAGEMENT HOLDING COMPANY, LLC,

*Petitioners*,

v.

STEVE GALLION

*Respondent*,

and

THE UNITED STATES OF AMERICA,

*Respondent-Intervenor*.

ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

## PETITION FOR A WRIT OF CERTIORARI

RICHARD P. BRESS
  *Counsel of Record*
MATTHEW A. BRILL
ANDREW D. PRINS
NICHOLAS L. SCHLOSSMAN
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
rick.bress@lw.com

*Counsel for Petitioners*

## QUESTION PRESENTED

The Telephone Consumer Protection Act (TCPA) imposes liability of up to $1,500 per call for any call made without prior express consent to a cell phone using an automatic telephone dialing system or an artificial or prerecorded voice. These broad prohibitions on speech, however, contain a host of exceptions, including for calls made "to collect a debt owed to or guaranteed by the United States" and calls made by governmental entities, along with various additional content-based exceptions created by the Federal Communications Commission (FCC). 47 U.S.C. § 227(b)(1)(A)(iii), (b)(2)(B).

In the decision below, the Ninth Circuit held that the TCPA's restrictions on speech were content-based and not narrowly tailored to any compelling government interest. Accordingly, the court held that the statute violated the First Amendment. But instead of holding the statute invalid for its unconstitutional prohibitions of speech, the court invoked the extraordinary "remedy" of rewriting the statute to prohibit *more* speech. Specifically, the Ninth Circuit purported to cure the constitutional defect by "severing" the government-debt-collection exception from the statute, while leaving all of the statute's speech restrictions intact. In the name of the First Amendment, the Ninth Circuit thereby judicially *expanded* the TCPA's abridgment of speech.

The question presented is:

Whether the TCPA's prohibitions on calls made using an automatic dialing system or an artificial or prerecorded voice are unconstitutional content-based restrictions of speech, and if so whether the Ninth Circuit erred in "remedying" that constitutional

ii

violation by broadening the prohibitions to abridge more speech.

# EXHIBIT I

(ORDER LIST: 589 U.S.)

MONDAY, JANUARY 27, 2020

CERTIORARI -- SUMMARY DISPOSITION

19-6684    DAVIS, RAKEEM A. V. UNITED STATES

The motion of petitioner for leave to proceed *in forma pauperis* and the petition for a writ of certiorari are granted. The judgment is vacated, and the case is remanded to the United States Court of Appeals for the Eleventh Circuit for further consideration in light of *Rehaif* v. *United States*, 588 U. S. ___ (2019).

ORDERS IN PENDING CASES

19A729    ROBERTS, COMFORT D. V. TEXAS
(19-6971)

The application to recall and stay mandate addressed to Justice Sotomayor and referred to the Court is denied.

19M92    OWENS, JULIAN D. V. UNIVERSITY OF SC, ET AL.

The motion to direct the Clerk to file a petition for a writ of certiorari out of time is denied.

19M93    PATTERSON, MAECHEL S. V. USDC ED NC

The motion for leave to proceed as a veteran is denied.

19M94    SANTA, ERASMO V. HERR, MARIA T., ET AL.

The motion to direct the Clerk to file a petition for a writ of certiorari out of time under Rule 14.5 is denied.

65, ORIG.    TEXAS V. NEW MEXICO

The motion for review of the River Master's final determination is set for oral argument in due course.

142, ORIG.    FLORIDA v. GEORGIA

      The Second Report of the Special Master is received and ordered filed.  Exceptions to the Report, with supporting briefs, may be filed within 45 days.  Replies, if any, with supporting briefs, may be filed within 30 days.  Sur-replies, if any, with supporting briefs, may be filed within 30 days.  The motion for allowance of fees and disbursements filed by the Special Master's assistant is granted, and the Special Master's assistant is awarded a total of $10,036.43, for the period November 6, 2018, through December 5, 2019, to be paid equally by the parties.

18-9526    McGIRT, JIMCY V. OKLAHOMA

      The motion for appointment of counsel is granted, and Ian H. Gershengorn, Esq., of Washington, D.C., is appointed to serve as counsel for petitioner.

19-373    WALKER, JAMES V. UNITED STATES

      It appearing that petitioner died on January 22, 2020, the petition for a writ of certiorari is dismissed.

19-465    )  CHIAFALO, PETER B., ET AL. V. WASHINGTON
        )
19-518    )  CO DEPT. OF STATE V. BACA, MICHEAL, ET AL.

      Petitioners in No. 19-465 and respondents in No. 19-518 shall file opening and reply briefs on the merits under the schedule set forth in Rules 25.1 and 25.3.  Respondent in No. 19-465 and petitioner in No. 19-518 shall file response briefs on the merits under the schedule set forth in Rule 25.2.

19-648    CACI PREMIER TECHNOLOGY, INC. V. AL SHIMARI, SUHAIL N. A., ET AL.

      The Solicitor General is invited to file a brief in this case expressing the views of the United States.

2

## CERTIORARI DENIED

19-353      TRADING TECHNOLOGIES INT'L V. IBG LLC, ET AL.

19-510      GOMEZ, JOSE J. V. BARR, ATT'Y GEN.

19-517      BARBOSA, DANIEL, ET AL. V. DEPT. OF HOMELAND SEC., ET AL.

19-522      TRADING TECHNOLOGIES INT'L V. IBG LLC, ET AL.

19-534      KADRIA, LAHIM V. BARR, ATT'Y GEN.

19-551      CALZONE, RONALD V. OLSON, ERIC

19-574      POOLE, SHEILA J. V. NY CITIZENS' COALITION

19-582      EDMONDSON, SARA A. V. LILLISTON FORD INC., ET AL.

19-651      DeROSE, JOHN P. V. ORLAND PARK, IL, ET AL.

19-654      KALEIDA HEALTH V. BIONDO, KATHLEEN

19-658      J. G. V. HI DEPT. OF ED., ET AL.

19-660      SILVER, DAVID V. HAMRICK & EVANS, LLP

19-674      MARTIN, JAMES L. V. NATIONAL GENERAL ASSURANCE CO.

19-681      SHALABY, ANDREW W. V. USDC ND IL

19-683      MOSS, JERMAINE L. V. ATKINSON, WARDEN

19-684      SAUNDERS, DARRELL, ET UX. V. DEUTSCHE BANK NATIONAL TRUST CO.

19-696      HAENDEL, DAN V. REED, ANNE, ET AL.

19-697      PAVATT, JAMES D. V. SHARP, INTERIM WARDEN

19-700      RAMOS GONZáLEZ, LUIS A., ET AL. V. SCOTIABANK DE PR, ET AL.

19-705      SHARPE, JOHN F. V. UNITED STATES

19-712      HAMP'S CONSTRUCTION V. INLAND MARINE SERVICES

19-724      ARAKAKI, KEITH Y. V. BRENNAN, POSTMASTER GEN., ET AL.

19-762      OWNER OPERATOR, ET AL. V. PA TURNPIKE, ET AL.

19-772      DIAZ, ALBERT V. UNITED STATES

19-809      BONIN, MICHAEL V. UNITED STATES

19-5638     LEE, JEFFREY E. V. FLORIDA

19-5889     TORRES-ARROYO, JONATHAN V. NEW JERSEY

| | |
|---|---|
| 19-6094 | HERRERA-SEGOVIA, ANDRES V. UNITED STATES |
| 19-6191 | K. N., ET UX. V. MT DEPT. OF PUBLIC HEALTH |
| 19-6214 | FUQUEN, LUIS V. EVERITT, TRINA |
| 19-6289 | MOHR, BRIAN T. V. UNITED STATES |
| 19-6306 | MOTA, JONATHAN V. UNITED STATES |
| 19-6320 | WILLIAMS, NALEN P. V. UNITED STATES |
| 19-6372 | PARSON, KELBY G. V. UNITED STATES |
| 19-6655 | MATHIS, TERRENCE L. V. UNITED STATES |
| 19-6657 | SMITH, RIKISHA S. V. SCOTT, DR., ET AL. |
| 19-6660 | SCHERMERHORN, RONALD F. V. DAVIS, DIR., TX DCJ |
| 19-6681 | WILLIS, LOUIS M. V. VIRGIN ISLANDS |
| 19-6690 | MAHANY, MOLLY A. V. BUFFALO POLICE DEPT., ET AL. |
| 19-6694 | SUNDY, TIM V. CHRISTIAN, MARTHA C. |
| 19-6695 | RIGWAN, ILANA V. NEUS, JORDAN L. |
| 19-6713 | HORTON, DEREK T. V. COCHRAN, SAM |
| 19-6714 | GOODMAN, KEITH D. V. PEARSON, WARDEN |
| 19-6722 | LEACH, ROBIN V. UNITED STATES |
| 19-6724 | ZARUM, LORIE A. G. V. HOAG MEMORIAL HOSPITAL, ET AL. |
| 19-6727 | ANDREWS, TYRONE M. V. NAGY, WARDEN |
| 19-6728 | HEREDIA, JOSE A. V. FLORIDA |
| 19-6730 | HARINARAIN, CAMERON A. V. KAUFFMAN, SUPT., HUNTINGDON |
| 19-6731 | HENRY, TRAVELL V. WARREN, WARDEN |
| 19-6732 | IVIE, MARTIN S. V. WASHINGTON |
| 19-6733 | DURHAM, GEORGE R. V. SHAPIRO, ATT'Y GEN. OF PA |
| 19-6734 | LOPEZ, ARTHUR V. LOPEZ, CHERYL |
| 19-6737 | LITTLE, LEONARD L. V. FLORIDA |
| 19-6738 | SARRINGAR, WILLIAM A. V. DAVIS, DIR. TX DCJ |
| 19-6741 | RAMIREZ, JOSE J. V. BLOOM, JEFFREY C., ET AL. |

19-6742    PRIETO, JORGE V. INCH., SEC., FL DOC, ET AL.

19-6743    NELSON, KENNETH D. V. TEXAS

19-6744    MERCK, KEVIN M. V. MN SUPREME COURT, ET AL.

19-6745    PAUL, JOSEPH S. V. FLORIDA

19-6749    JOHNSON, BRYAN K. V. FLORIDA

19-6750    CEASAR, RONNIE R. V. LOUISIANA

19-6754    MEDINA, CESAREO V. V. CALIFORNIA

19-6762    WIMBERLEY, FRED M. V. SACRAMENTO, RACHEL M.

19-6763    WHITE, ANTHONY D. V. FLORIDA

19-6765    McNAIR, ANTHONY L. V. NORTH CAROLINA

19-6767    TRUE, DOUGLAS D. V. KELLEY, DIR., AR DOC

19-6768    VANDERMEULEN, CARY V. LECLAIRE, THOMAS L., ET AL.

19-6770    CHIU, VINCA S. V. FIRST GROUP AMERICA, ET AL.

19-6771    PARR, LARRY W. V. RODRIGUEZ, SIMON E.

19-6777    ANDERSON, IRIS L. V. FLORIDA

19-6779    STEVENS, MITCHELL V. VANNOY, WARDEN, ET AL.

19-6780    KINNEY, DARIUS V. OHIO

19-6782    MALLARD, ADRIENNE V. NEXT DAY TEMPS, ET AL.

19-6787    MITCHELL, ROBERT L. V. MILLER, MAGISTRATE JUDGE, ET AL.

19-6788    ROBLERO, EBER V. FLORIDA

19-6817    WHEELER, ANTHONY M. V. NEAL, SUPT., IN

19-6822    COZZI, GUY V. AMERICAN STOCK EXCHANGE, ET AL.

19-6829    WASHINGTON, LISA V. DELEON, DIANA, ET AL.

19-6861    HENDERSON, TONY L. V. ARKANSAS

19-6867    MAYA, JOSE L. V. DEPT. OF HOMELAND SEC., ET AL.

19-6900    SMITH, ALDON V. WILKIE, SEC. OF VA

19-6935    KING, RICKIE J. V. UNITED STATES

19-6936   )   VIGIO-APONTE, PEDRO V. UNITED STATES
          )
19-6947   )   RODRIGUEZ-MARTINEZ, REINALDO V. UNITED STATES

19-6940       PETROSKE, KEVIN J. V. UNITED STATES

19-6941       COLLINS, MICHAEL V. UNITED STATES

19-6948       SPRY, MICHAEL E. V. UNITED STATES

19-6953       DAVIS, DONOVAN G. V. UNITED STATES

19-6960       TULIN, ULRISTE V. UNITED STATES

19-6961       NAVARRO, HERNAN V. UNITED STATES

19-6968       BRUMBACH, BRIAN D. V. UNITED STATES

19-6970       SULLIVAN, MONTY D. V. WYOMING

19-6972       SANCHEZ-MORA, TARSIS G. V. UNITED STATES

19-6973       WIGGINS, TAIWAN, ET AL. V. UNITED STATES

19-6975       BENNETT, JASON L. V. UNITED STATES

19-6995       KING, RICHARD A. V. UNITED STATES

19-6998       KOFALT, PATRICK V. UNITED STATES

19-7006       DRUMMOND, ALVIN A. V. UNITED STATES

19-7008       HERNANDEZ-ZAVALA, ABRAHAM V. UNITED STATES

19-7014       GAFFNEY, GEOFFREY S. V. UNITED STATES

19-7020       GARAY, NAHACH V. UNITED STATES

19-7026       GUY, JAMES W. V. OHIO

19-7034       JOE, CHARLEY V. UNITED STATES

19-7035       LOWRY, MICHAEL B. V. UNITED STATES

19-7038       LEE, ANGELA M. V. UNITED STATES

19-7041       RAMIREZ-RIVERA, PEDRO L. V. UNITED STATES

19-7042       ROSADO, CHRISTIAN V. UNITED STATES

19-7044       FISHER, DARMARCUS V. UNITED STATES

19-7051       REYES-MARTINEZ, ADAN V. UNITED STATES

19-7053       BARNES, JASON D. V. UNITED STATES

19-7056      KINSEY, ROBERT K. V. UNITED STATES

19-7059      SCHIEFER, JOHN K. V. UNITED STATES

19-7062      VILLANUEVA, FLORENTINO V. UNITED STATES

19-7070      TOMEY, GARY R. V. UNITED STATES

19-7072      WALKER, TYRONE V. UNITED STATES

19-7075      ROUSE, MATTHEW V. UNITED STATES

19-7078      THOMPSON, BRAUN N. V. UNITED STATES

19-7083      PERDUE, LEROY L. V. UNITED STATES

19-7084      MORCOMBE, ANDREW H. V. UNITED STATES

19-7090      EVANS, WARREN V. UNITED STATES

19-7092      CARMICHAEL, LAFOREST V. UNITED STATES

19-7098      SHAW, ANTONIO V. UNITED STATES

19-7103      MERRITT, EDWARD V. UNITED STATES

19-7105      VAZQUEZ-CHAVARRIA, MIGUEL J. V. UNITED STATES

19-7106      WOODLEY, PETER V. UNITED STATES

19-7107      PERKINS, JOSEPH T. V. UNITED STATES

19-7115      FAULKNER, ALEXANDER V. UNITED STATES

19-7117      INGRAM, VANCE E. V. UNITED STATES

          The petitions for writs of certiorari are denied.

19-515       AMATO, BALDASSARE V. UNITED STATES

          The petition for a writ of certiorari is denied.  Justice
     Sotomayor and Justice Kagan took no part in the consideration or
     decision of this petition.

19-521       CHARGEPOINT, INC. V. SEMACONNECT, INC.

          The motion of Jeremy C. Doerre for leave to file a brief as
     *amicus curiae* is granted.  The petition for a writ of certiorari
     is denied.

19-6658    SIMMONS, BOOKER T. V. UNITED STATES

19-6670    BRIDGE, MICHAEL V. UNITED STATES

19-6686    HUNTER, DARREN K. V. UNITED STATES

19-6689    FERNANDEZ, FRANK V. UNITED STATES

19-6755    GARCIA-CRUZ, FREDERICK V. UNITED STATES

19-6759    LACKEY, JAMES A. V. UNITED STATES

19-6769    HICKS, STEVEN V. UNITED STATES

The petitions for writs of certiorari are denied.  Justice Sotomayor, with whom Justice Ginsburg joins, dissenting from the denial of certiorari:  I dissent for the reasons set out in *Brown* v. *United States*, 586 U. S. ___ (2018) (Sotomayor, J., dissenting).

## HABEAS CORPUS DENIED

19-7147    IN RE KHAYREE SMITH

The petition for a writ of habeas corpus is denied.

## MANDAMUS DENIED

19-7015    IN RE MICHAEL F. HARRIS

19-7047    IN RE ANTWOYN SPENCER

19-7049    IN RE ANTWOYN SPENCER

The petitions for writs of mandamus are denied.

19-6726    IN RE BILLIE BYRD

The petition for a writ of mandamus and/or prohibition is denied.

## REHEARINGS DENIED

19-248    JAMMAL, WALID, ET AL. V. AMERICAN FAMILY INS. CO., ET AL.

19-383    RAIMONDO, JOSEPH V. HOOD, CHIEF JUDGE, ET AL.

19-406    TOUMA, MARILU F. V. GEN. COUNSEL OF REGENTS, ET AL.

19-410    IN RE RICHARD J. FIELDS

19-5885    COLLINS, OLUFEMI S. V. GONZALEZ, MARK, ET AL.

19-5914    LASHER, LENA V. STAVIS, ROGER, ET AL.

19-5925    RHODES, KAVIN M. V. SWARTH, PETER C.

19-6074    NELSON, GERALD V. LOCAL 1181-1061, ET AL.

19-6121    IN RE MATTHEW L. STASZAK

19-6231    CHAPMAN, WILLIAM D. V. UNITED STATES

19-6251    IN RE ADIB MAKDESSI

19-6487    DONAHUE, SEAN M. V. PENNSYLVANIA

       The petitions for rehearing are denied.

19-6189    BROWN, LEWIS V. UNITED STATES

       The petition for rehearing is denied.  Justice Kagan took no

part in the consideration or decision of this petition.

### ATTORNEY DISCIPLINE

D-3035    IN THE MATTER OF DISBARMENT OF ANGELA M. BLYTHE

       Angela M. Blythe, of Oakland, Maryland, having been

suspended from the practice of law in this Court by order of

October 29, 2018; and a rule having been issued and served upon

her requiring her to show cause why she should not be disbarred;

and the time to file a response having expired;

       It is ordered that Angela M. Blythe is disbarred from the

practice of law in this Court.

D-3036    IN THE MATTER OF DISBARMENT OF MICHAEL WILLIAM KWASNIK

       Michael William Kwasnik, of Hollywood, Florida, having been

suspended from the practice of law in this Court by order of

October 29, 2018; and a rule having been issued requiring him to

show cause why he should not be disbarred; and the time to file

a response having expired;

It is ordered that Michael William Kwasnik is disbarred from the practice of law in this Court.

D-3041    IN THE MATTER OF DISBARMENT OF FRAMPTON DURBAN, JR.

Frampton Durban, Jr., of Newberry, South Carolina, having been suspended from the practice of law in this Court by order of October 29, 2018; and a rule having been issued requiring him to show cause why he should not be disbarred; and the time to file a response having expired;

It is ordered that is disbarred from the practice of law in this Court.

D-3042    IN THE MATTER OF DISBARMENT OF MICAH JARED SMITH

Micah Jared Smith, of Wilmington, Delaware, having been suspended from the practice of law in this Court by order of August 5, 2019; and a rule having been issued and served upon him requiring him to show cause why he should not be disbarred; and the time to file a response having expired;

It is ordered that Micah Jared Smith is disbarred from the practice of law in this Court.

D-3043    IN THE MATTER OF DISBARMENT OF JOHN T. LYNCH, JR.

John T. Lynch, Jr., of Scottsdale, Arizona, having been suspended from the practice of law in this Court by order of August 5, 2019; and a rule having been issued requiring him to show cause why he should not be disbarred; and the time to file a response having expired;

It is ordered that John T. Lynch, Jr. is disbarred from the practice of law in this Court.

D-3045    IN THE MATTER OF DISBARMENT OF BRUCE B. McLEOD, III

Bruce B. McLeod, III, of Dallas, Texas, having been

suspended from the practice of law in this Court by order of August 5, 2019; and a rule having been issued requiring him to show cause why he should not be disbarred; and the time to file a response having expired;

It is ordered that Bruce B. McLeod, III is disbarred from the practice of law in this Court.

D-3046    IN THE MATTER OF DISBARMENT OF EPHRAIM CHUKWUEMEKA UGWUONYE

Ephraim Chukwuemeka Ugwuonye, of Silver Spring, Maryland, having been suspended from the practice of law in this Court by order of August 5, 2019; and a rule having been issued requiring him to show cause why he should not be disbarred; and the time to file a response having expired;

It is ordered that Ephraim Chukwuemeka Ugwuonye is disbarred from the practice of law in this Court.

D-3047    IN THE MATTER OF DISBARMENT OF MARC NORMAN SILBERMAN

Marc Norman Silberman, of Cleveland, Ohio, having been suspended from the practice of law in this Court by order of August 5, 2019; and a rule having been issued requiring him to show cause why he should not be disbarred; and the time to file a response having expired;

It is ordered that Marc Norman Silberman is disbarred from the practice of law in this Court.

D-3048    IN THE MATTER OF DISBARMENT OF JERRY STEVEN PACKARD

Jerry Steven Packard, of Wooster, Ohio, having been suspended from the practice of law in this Court by order of August 5, 2019; and a rule having been issued and served upon him requiring him to show cause why he should not be disbarred; and the time to file a response having expired;

11

It is ordered that Jerry Steven Packard is disbarred from the practice of law in this Court.

D-3050    IN THE MATTER OF DISBARMENT OF MARK BRIAN MORAN

Mark Brian Moran, of Aviston, Illinois, having been suspended from the practice of law in this Court by order of August 5, 2019; and a rule having been issued and served upon him requiring him to show cause why he should not be disbarred; and the time to file a response having expired;

It is ordered that Mark Brian Moran is disbarred from the practice of law in this Court.

D-3053    IN THE MATTER OF DISBARMENT OF BEN ELTON BRUNER

Ben Elton Bruner, of Opelika, Alabama, having been suspended from the practice of law in this Court by order of August 23, 2019; and a rule having been issued requiring him to show cause why he should not be disbarred; and the time to file a response having expired;

It is ordered that Ben Elton Bruner is disbarred from the practice of law in this Court.