HEDIN HALL LLP
Frank S. Hedin (Bar No. 291289)
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: + 1 (415) 766-3534
Facsimile: + 1 (415) 402-0058
Email: fhedin@hedinhall.com

BURSOR & FISHER, P.A.
L. Timothy Fisher (SBN 191626)
1990 North California Blvd., 940
Walnut Creek, California 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Counsel for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON SENSIBAUGH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EF EDUCATION FIRST, INC.,<br><br>Defendant. | Case No. 20-cv-1068-MWF<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY** |

Plaintiff Shannon Sensibaugh, individually and on behalf of all others similarly situated, submits this response in opposition to the Motion to Stay (ECF No. 12 (the "Motion")) filed by Defendant EF Education First, Inc.

# INTRODUCTION

Defendant argues that this case should be stayed because the Supreme Court is poised to abolish the Telephone Consumer Protection Act ("TCPA") in order to resolve *Barr v. Political Consultants*, No. 19-631 (U.S.), which concerns a debt-collection exemption that Congress introduced to the law in 2015.[1] The Motion should be denied for at least three reasons.

First, that is never going to happen. If the Supreme Court agrees that the exemption (which is completely irrelevant to this case) is unconstitutional, the Court will simply sever that offending language and leave the balance of the TCPA intact. As the Fourth Circuit recognized in the decision giving rise to *Political Consultants*, the Supreme Court has a strong preference for severing flawed portions of statutes to limit the impact of its decisions. *American Association of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 171 (4th Cir. 2019) ("*AAPC*"). With respect to the TCPA specifically, Congress explicitly directed (in the statute itself) that, if any part of the statute "is held invalid, the remainder . . . shall not be affected." 47 U.S.C. § 608. This severability provision creates "a presumption that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision." *Id.* (citing *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987)). As the Fourth Circuit observed in *AAPC*, "[f]or twenty-four years, from 1991 until 2015,

---

[1] The clause (the "2015 Clause") simply "excepted from the ban [against unsolicited robocalls] all calls to cell phones 'made solely to collect a debt owed to or guaranteed by the United States.'" *American Association of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 162 (4th Cir. 2019) ("*AAPC*") (quoting Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a), 129 Stat. 584, 588 (2015) (amending 47 U.S.C. § 227(b)(1)(A)(iii))).

the automated call ban was 'fully operative,'" such that "a severance of the debt-collection exemption w[ould] not undermine the automated call ban." *Id.* (quoting *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 509 (2010)).

Defendant argues that it is within the realm of possibility that the Supreme Court will decide *AAPC* in such a way that results in a wholesale invalidation of the TCPA, but nowhere does Defendant attempt to explain why the Supreme Court would decline to simply sever the debt-collection exemption from the statute. In fact, while district and appellate courts around the country are divided with respect to the constitutionality of the exemption, they are united with respect to its severability. *See, e.g., Katz v. Liberty Power Corp.*, No. 18-cv-10506, 2019 WL 6051442, at *3 (D. Mass. Nov. 15, 2019) ("There is not a substantial ground for a difference of opinion regarding the debt-collection exception's severability."). Plaintiff cites below more than a dozen decisions holding that the 2015 Clause is severable. And the Motion to Stay cites to no legal authority holding otherwise. Defendant's subjective belief that the Supreme Court will throw out the baby with the bathwater is no basis for indefinitely staying this case.

<u>Second</u>, to obtain the requested stay, Defendant bears the burden of making out a "clear case of hardship or inequity in being required to go forward" absent a stay. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Even viewed in the light most favorable to Defendant, it is still far from "clear" that the Supreme Court will consider invalidating the entire statutory scheme when it decides *Barr*, much less that the Defendant will suffer any meaningful "hardship or inequity in being required to go forward" in this Court in the interim. The Supreme Court's strong preference in favor of severability, the passage by Congress of a severability provision governing the

PLTF'S RESPONSE IN OPPOSITION
TO DEF'S MOTION TO STAY

3

Civil Case No.: 20-cv-1068-MWF

TCPA, the fact that the statute was "fully operative" for decades prior to the introduction of the debt-collection exemption, the absence of any disagreement among trial and circuit courts regarding severability, and the Supreme Court's general reluctance to jettison entire statutory schemes are all substantial, nearly insurmountable obstacles to the Supreme Court issuing the sort of decision in *Barr* that the Defendant envisions in its Motion to Stay.

Third, given the above points about severability, any decision the Supreme Court issues in *AAPC* is unlikely to have any bearing whatsoever on the issues in this case because this case has nothing to do with debt collection or the debt-collection exemption. Nor would a stay conserve judicial resources. A stay of this case pending a decision in *Barr* would only unduly prejudice and tactically disadvantage Plaintiff and the proposed class; over time it will only become more difficult for Plaintiff to obtain the proof necessary to certify a class and prevail on the merits as memories fade and documents and electronically stored information becomes more difficult to obtain. Moreover, a stay would prevent Plaintiff from expeditiously obtaining the injunctive relief she seeks on behalf of herself and the proposed Class in the Complaint.

The Motion should be denied in its entirety.

## THE APPLICABLE LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants[.]" *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005) (same). In considering whether to exercise its discretion to

PLTF'S RESPONSE IN OPPOSITION
TO DEF'S MOTION TO STAY

4

Civil Case No.: 20-cv-1068-MWF

grant a stay, a court should weigh the following three factors, as articulated by the Supreme Court in *Landis*: "[1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see also Landis*, 299 U.S. at 254-55.

Although the question of whether to stay a case pending a decision by the Supreme Court in another matter is left to the discretion of the district court, that "does not mean that no legal standard governs that discretion." *Nken v. Holder*, 556 U.S. 418, 427 (2009). To the contrary, "[a] motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Id*. As such, the proponent of a stay — here, the Defendant — "bears the burden of showing that the circumstances justify an exercise of that discretion." *Id*. at 433-34. That burden is a heavy one, requiring the proponent to "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255.

## ARGUMENT

As a threshold matter, Defendant does not even cite to the Supreme Court's controlling decision in *Landis*, let alone attempt to demonstrate that any of its factors are satisfied based on the circumstances of this case. The Motion should be denied for this reason alone. *See, e.g., Adlao v. JPMorgan Chase & Co.*, No. C 10-04508 SBA,

2011 WL 864929, at *5 (N.D. Cal. Mar. 11, 2011) ("Notably, Defendants make no attempt to frame their request in accordance with *Landis* or its progeny. . . . Due to Defendants' unfortunate approach to motion practice, the Court declines to consider Defendants' stay request at this juncture.").

Even considered on the merits, the Motion fails to identify any circumstances capable of satisfying any of the three *Landis* factors, and accordingly fails to demonstrate the propriety of a stay pending the Supreme Court's decision in *Barr*. The Motion should be denied, and this litigation should proceed in the ordinary course.

### I. Defendant Fails to Demonstrate an Absence of Prejudice to Plaintiff or the Proposed Class as a Result of the Requested Stay

First, Defendant fails to demonstrate that neither Plaintiff nor the proposed Class would be damaged from the granting of the requested stay. *See CMAX, Inc.*, 300 F.2d at 268; *Landis*, 299 U.S. at 254-55.

There is no question that Plaintiff and proposed class members will be prejudiced by a stay. For one thing, justice delayed is justice denied, and the requested stay would deprive Plaintiff and the proposed class members of their right to an expeditious vindication of their legal rights. *See Ricci v. Chicago Mercantile Exch.*, 409 U.S. 289, 320-21 (1973) ("[E]xcept in extraordinary situations, every citizen is entitled to call upon the judiciary for expeditious vindication of his legal claims of right.") (Marshall, J., dissenting). Moreover, unlike the ordinary delay inherent in litigation, Defendant's request for an extended, "open-ended stay will likely cause delay and prejudice to Plaintiffs' case" as a result of fading witness memories, document spoliation, and other irretrievable loss of evidence. *See Molnar v. NCO Fin. Sys., Inc.*, No. 13-cv-00131,

2015 WL 1906346, at *4 (S.D. Cal. April 20, 2015); *see also McColm v. San Francisco Hous. Auth.*, No. C 02-5810 PJH, 2007 WL 1342502, at *5 (N.D. Cal. May 8, 2007) (stays increase the "risk that evidence will disappear and witness memories will fade"); *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("Unnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale.").

      Such risks of harm are particularly acute in putative class actions such as this case, where the ability to reach class members diminishes over time. Forcing Plaintiff to wait an additional several months or longer to seek a determination as to whether a class should be certified (and then to notify any class that is certified) would have measurable harm on putative class members. Indeed, Rule 23 of the Federal Rules of Civil Procedure specifically notes that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A) (emphasis added). The lengthy stay sought by Defendant is thus contrary to Rule 23's insistence that class certification be timely decided.

      Finally, Plaintiff and members of the proposed class would be damaged by a stay because it would delay this Court granting the injunctive relief sought in the Complaint, which is one of the primary forms of relief sought by Plaintiff to put a stop to Defendant's transmission of more unsolicited autodialed text messages to her and other class members in the future. (*See* Compl. at 13.) Plaintiff's prayer for injunctive relief makes the requested stay especially inappropriate in this case. *See Lockyer v. Mirant*,

PLTF'S RESPONSE IN OPPOSITION      7      Civil Case No.: 20-cv-1068-MWF
TO DEF'S MOTION TO STAY

398 F.3d 1098, 1110-13 (9th Cir. 2005) (discussing allegations of continuing harm and prayers for injunctive or declaratory relief).

Accordingly, the first *Landis* factor weighs against putting this litigation on ice pending a decision in *Barr*. *Cf., e.g., Cartmill v. Sea World, Inc.*, No. 10CV00361 DMS POR, 2010 WL 4569922, at *2 (S.D. Cal. Nov. 5, 2010) (finding the potential length of stay pending resolution of an appeal before the Ninth Circuit that had already been fully briefed "creates the increased possibility of damage to Plaintiffs and weighs against its imposition").

**II. Defendant Fails to Identify any Hardship or Inequity that it Would Suffer Absent the Requested Stay**

Second, Defendant fails to demonstrate that it would suffer any hardship or inequity if the litigation were to proceed in the ordinary course absent the requested stay. *See CMAX, Inc.*, 300 F.2d at 268; *Landis*, 299 U.S. at 255 (requiring the movant to "make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else").

With respect to this factor, Defendant simply asserts that "If a stay is not granted, EF—and Plaintiff, for that matter—will suffer harm in the form of potentially unnecessary fees and costs spent litigating an entire class action that may be moot shortly." (Mot. at 13; *see also id.* at 14 ("If this case is not stayed, it is possible that EF may be forced to litigate, for months, only to have the Supreme Court issue an order that will dispose of this action. Significant resources, including the Court's, could be wasted if an order invalidating the cell-phone ban under Section 227 (b)(1)(A)(iii) is

issued.").). In other words, the only purported "harm" the Defendant points to is being required to comply with the basic obligations of every litigant in every civil action under the Federal Rules. That is plainly insufficient to obtain a stay. It is well established that simply "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112.

Because Defendant has failed to "make out a clear case" that it would suffer any actual hardship or inequity absent a stay, the second *Landis* factor also weighs against the requested stay.

**III. Defendant Fails to Demonstrate that a Stay of the Litigation Pending a Decision in *Barr* Would Simplify any Issues in the Case**

Finally, Defendant fails to demonstrate that the requested stay would be likely to simplify any issues, proof, or questions of law in the case. *See CMAX, Inc.*, 300 F.2d at 268; *Landis*, 299 U.S. at 255.

In *AAPC,* the Fourth Circuit took up three issues: (1) the appropriate level of scrutiny under which to examine the 2015 Clause, (2) whether the 2015 Clause "survives the applicable level of scrutiny," and (3) if not, "whether to strike the automated call ban in its entirety, or whether to simply sever the flawed exemption therefrom." 923 F.3d at 165. Ultimately, the court found that strict scrutiny applied and that the 2015 Clause was unconstitutional, but that it was severable and therefore did not mandate striking the automated call ban. *Id.* at 161. A petition for certiorari was filed and granted. *See* --- S. Ct. ---, 2020 WL 113070 (Jan. 10, 2020). But an examination of the decisions to date regarding the 2015 Clause makes clear that the

real issue to be decided by the Supreme Court is the validity of the 2015 Clause itself, while the severability of the remainder of the statute is not legitimately in question.

To be sure, other courts have reached varying conclusions as to the constitutionality of the 2015 Clause. *Compare Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128 (D. Minn. 2017) and *Mejia v. Time Warner Cable, Inc.*, 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017) (finding that 2015 Clause was constitutional), *with AAPC*, 923 F.3d 159 (4th Cir. 2019); *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) (finding that 2015 Clause was unconstitutional). Indeed, the *AAPC* case itself was an appeal to the Fourth Circuit from a district court's opinion finding that the 2015 Clause *was* constitutional. *See* 923 F.3d at 161 ("The district court … ruled that it does not violate the Free Speech Clause."). Thus, it is unsurprising that the Supreme Court granted certiorari in order to provide guidance on this dispute.

By contrast, the argument that the 2015 Clause invalidates the entire TCPA is a throw-away argument that has never worked in any court, ever. And it has been tried repeatedly. Every single time this issue was taken up, courts found that the 2015 clause was severable and therefore could not invalidate the rest of the statute. *See AAPC*, 923 F.3d at 161 ("[W]e are satisfied to sever the flawed exemption from the automated call ban"); *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1157 (9th Cir. 2019) ("We reject Facebook's challenge that the TCPA as a whole is facially unconstitutional, but we sever the debt collection exception as violative of the First Amendment."); *Edwards v. Conn's, Inc.*, 2019 WL 4731942, at *1 (D. Nev. Sept. 27, 2019) ("Moving forward, all claims in this case will continue under the pre-amendment TCPA, which the Ninth Circuit has held to be content-neutral and consistent with the First Amendment.");

*Katz*, 2019 WL 4645524, at *8 ("[T]he Court concludes that the government debt-collection exception of the TCPA is severable. . . . Therefore, the claims in this case are unaffected by the debt-collection exception's unconstitutionality.); *Woods v. Santander Consumer USA Inc.*, 2017 WL 1178003, at *3 n.6 (N.D. Ala. Mar. 30, 2017) ("Even if the Court were to … find that the government-debt exception is invalid, the Court would not deem the entire TCPA to be unconstitutional because the [government-debt] exception [is] severable from the remainder of the statute." (internal quotation marks and citation omitted; alterations in original)); *Sliwa v. Bright House Networks, LLC*, No. 2:16-cv-235, 2018 WL 1531913, at *6 (M.D. Fla. Mar. 29, 2018) ("There can be little doubt that, upon a finding that the Government–Debt Exception violates the First Amendment, the proper course would be to sever that clause from the rest of Section 227(b)(1)(A)(iii)."); *Wijensinha v. Bluegreen Vacations Unlimited, Inc.*, 2019 WL 3409487, at 6 (S.D. Fla. Apr. 3, 2019) ("[I]f the amended TCPA were deemed unconstitutional , a finding of severability would cure the constitutional defect and preclude invalidation of the entire statute."); *Parker v. Portfolio Recovery Assocs., LLC*, 2019 WL 4149436, at *2 (C.D. Cal. July 11, 2019) ("[S]pecific evidence of the legislature's preference for retaining the valid TCPA provision is provided.").[2] Thus,

---

[2] *See also Smith v. Truman Rd. Dev., LLC*, 2019 WL 5654352, at *16 (W.D. Mo. Oct. 31, 2019) ("Given the general presumption in favor of severability, the apparent Congressional intent that the unconstitutional provision be severed, and the TCPA's demonstrated ability to be fully operative without the severed provision, the Court finds the government-debt exception is severable. . . . Therefore, Defendants' motion to dismiss on the ground that the government-debt exception is unconstitutional and unseverable is denied."); *Hand v. Beach Entm't KC, LCC*, , 2019 WL 5654351, at *16 (W.D. Mo. Oct. 31, 2019) (same); *Taylor v. KC VIN, LLC*, 2019 WL 6499140, at *16 (W.D. Mo. Dec. 3, 2019) (same); *Doohan v. CTB Inv'rs, LLC*, 2019 WL 6497433, at *16 (W.D. Mo. Dec. 3, 2019) (same).

as Defendant itself acknowledges, there is a clear "trend" in the federal judiciary to "sever[] the exemption from the statute." (Mot. at 7 n.10 (collecting cases).)

There is good reason why every decision has come down on the same side. Congress made its intent very clear: "If any provision of this chapter [containing the TCPA] … is held invalid the remainder … shall not be affected thereby." 47 U.S.C. § 608. "While not dispositive, this unambiguous language endorsing severability relieves us of a counterfactual inquiry as to congressional intend and creates a presumption of severability absent 'strong evidence that Congress intended otherwise.'" *Duguid*, 926 F.3d at 1156 (quoting *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 686 (1987)). "History reaffirms what Congress said. The TCPA has been 'fully operative' for more than two decades. Then, with little fanfare, Congress appended the comparatively modest debt-collection exception as a small portion of the 2015 budget bill. The newly enacted exception did not suddenly and silently become so integral to the TCPA that the statute could not function without it." *Id.* at 1156-57 (internal quotations omitted). Severing the 2015 Clause simply brings the TCPA back to the tried-and-true form in which it existed for the two and a half decades prior to the passage of the 2015 Clause.

The Motion cites to two unpublished decisions from district courts of other circuits entering stays pending the Supreme Court's decision in *Barr – Seefeldt v. Entertainment Consulting Int'l, LLC*, No. 4:19-cv-00188, 2020 WL 905844 (E.D. Mo. Feb. 25, 2020) and *Wright v. Exp Realty, LLC*, No. 6:18-cv-1851, 2020 WL 1149906, at *1 (M.D. Fla. Feb. 7, 2020). Both of these decisions are inapposite and unpersuasive, and their reasoning should not be adopted by this Court.

The court in *Seefeldt* entered a stay for reasons largely having nothing to do with the constitutionality of the TCPA or the pendency of the appeal in *Barr*. Indeed, the *Seefeldt* court's decision to enter a stay rested primarily on the plaintiff's low likelihood of success in proving a violation of the statute, based on the Court's finding that the technology used to transmit the text messages at issue was unlikely to qualify as an ATDS pursuant to applicable Eighth Circuit and Eastern District of Missouri legal authorities. *See Seefeldt*, 2020 WL 905844, at *3 ("[P]laintiff says it is defendants who have 'shown no likelihood of success on the merits.' But, as explained above, *Beal* patently suggests otherwise—defendants won summary judgment in their favor on facts substantially similar to this case. Similarly, plaintiff argues the public interest would be harmed because 'land line and cellular telephone lines were being abused' by defendants, which must be stopped. But *Beal* again suggests otherwise, finding the platforms used by Brew House (for the same years at issue, no less) 'are not an ATDS under the TCPA.'"). This Court, by contrast, must defer to the broad interpretation of the definition of ATDS set forth by the Ninth Circuit in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018). And Plaintiff's Complaint alleges facts that place Defendant's dialing technology squarely within *Marks*'s definition of ATDS. (*See, e.g.,* Compl. ¶¶ 16-17.)

The Middle District of Florida's decision in *Wright* is equally unpersuasive. *Wright* contains almost no legal analysis and fails to cite to let alone apply the pertinent factors set forth in the Supreme Court's decision in *Landis*. Instead of applying the *Landis* factors, the decision in *Wright* relies entirely on the Supreme Court's decisions in *Ryan v. Gonzalez*, which concerned the district court's "equitable power to stay

proceedings when they determine that habeas petitioners are mentally incompetent," *Ryan v. Gonzalez*, 568 U.S. 57, 73 (2013), and *Clinton v. Jones*, which concerned a request by President William Jefferson Clinton to stay civil litigation against him while in office in light of the "unacceptable burden on the President's time and energy" that would result absent a stay, "impair[ing] the effective performance of his office," *Clinton v. Jones*, 520 U.S. 681, 702 (1997). But this case, as with *Wright,* is a TCPA case (not a habeas corpus matter), the defendant is text-message marketer (not the President of the United States), and the litigation concerns Defendant's liability for sending text messages via an ATDS (as opposed to the Plaintiff's mental competence). Thus, the district court in *Wright* arrived at the wrong result as a consequence of relying on the wrong legal authority. This Court should decline Defendant's invitation to follow *Wright*.

Rather, the Court should adopt the persuasive reasoning of the U.S. District Court for the Northern District of Illinois in *Bakov v. Consolidated World Travel,* No. 15-cv-2980 (N.D. Ill. Feb. 27, 2020) (a copy of the relevant proceedings are attached hereto as Exhibit "A"), where the district court denied a motion to stay pending *Barr* that was nearly identical to the Motion filed by Defendant in this case (and in the process rejected the reasoning of the district courts in *Wright* and *Seefeldt*, discussed above). The district court in *Bakov* explained the basis for its ruling as follows:

> THE COURT: . . . Defendant recently filed a motion asking the Court to stay this case until the Supreme Court has ruled on *Barr v. American Association of Political Consultants*. For the following reasons the motion is denied.
>
> The *Barr* case concerns a section of the Telephone Consumer Protection Act exempting automated calls made to collect on debts owed

to or guaranteed by the United States. The question is whether the section is a free speech violation. The Fourth Circuit found that it was and found that the clause, which Congress added to the TCPA in 2015, was severable from the rest of the statute. The Supreme Court granted cert.

Although that particular provision was not at issue in this case, defendants argue that there is a chance that the Supreme Court will invalidate the entire TCPA or that the proscription on using prerecorded voices will be affected in a way that renders this case moot. That likelihood, defendant argues, warrants a stay. Plaintiff responds that Congress added the disputed TCPA provision relatively recently, and that every appellate court to rule on the debt collection clause's constitutionality has found that it was severable from the rest of the statute. Further, plaintiff notes that the separate provision of the TCPA, see 47 U.S. Code Section 608, creates a strong presumption in favor of severability. Congress has written its preference for severability into the statutory text and, accordingly, the likelihood the entire TCPA will be invalidated is low.

Finally, plaintiffs argue that given the procedural posture of the case, a stay would harm the class.

The Court has the inherent power to manage its own docket. *See Landis v. North American Company*. Defendants have submitted supplemental authority demonstrating that some other courts have stayed their actions pending the Supreme Court decision, but this supplemental authority is not convincing. The 2015 debt collection provision is narrow and not implicated in this case. Therefore, whether it is upheld or severed does not affect these proceedings. Only a seismic shift, such as invalidation of the TCPA, would affect this case, and the plaintiffs convincingly dispute that despite defendants' assertions, such a shift would still not moot this case.

Further, continuing this case rather than staying it will consume some resources. But because the Court decided the most outstanding significant issues in its recent summary judgment opinion, not nearly as much remains to be done. Judicial economy is always a concern, but the Court finds that the very small likelihood of a fundamental shift in TCPA law does not outweigh everyone's interest, including the plaintiffs' and the Court's, in continuing apace. Thus, the Court will continue this case. Accordingly, the defendants' motion to stay is denied.

(Ex. A, at 3:14-5:19.).

So yes, there is a case going to the Supreme Court in which the argument advanced by Defendant is technically being advanced by the Respondent. But a review

of the fact that other courts have repeatedly come down on the same side of this issue strongly suggests that the Supreme Court has accepted the case to rule on the constitutionality of the 2015 Clause – not to undo the federal judiciary's unanimous conclusion on the severability question. And because the allegations of this case do not involve anything addressed in the 2015 Clause, the Supreme Court's decision is certain to be immaterial to this litigation.

Accordingly, the third and final *Landis* factor weighs heavily against granting the requested stay.

## CONCLUSION

For the foregoing reasons, the Motion (ECF No. 12) should be denied.

Dated: March 16, 2020      By:   /s/ Frank S. Hedin
                                                                      Frank S. Hedin

Frank S. Hedin (Bar No. 291289)
HEDIN HALL LLP
Four Embarcadero Center, Suite 1400
San Francisco, California 94104
Telephone: + 1 (415) 766-3534
Facsimile: + 1 (415) 402-0058
Email: fhedin@hedinhall.com

L. Timothy Fisher (SBN 191626)
BURSOR & FISHER, P.A.
1990 North California Blvd., 940
Walnut Creek, California 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Counsel for Plaintiff and the Putative Class*